**BANKERS TRUST COMPANY and Great Lakes Realty Corp., Plaintiffs,**

**v.**

**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, Defendants.**

**No. 80 Civ. 2782(MEL).**

United States District Court, S. D. New York.

July 22, 1981.

---

Moses & Singer, New York City, for plaintiffs; David B. Eizenman, Steven Glaser, New York City, of counsel.

William F. Larkin, New York City, for defendant.

**LASKER, District Judge.**

This case presents the question whether an insurance policy whose coverage includes damage to the property of third persons but excludes damage to the insured's property, covers work performed on the insured's property in order to prevent damage to the property of third parties.

### I.

Bankers Trust Company and Great Lakes Realty Corp. move for summary judgment in their favor for monies allegedly due under two insurance policies issued by Hartford Accident and Indemnity Company for work done to correct a pollution problem caused by a leaking fuel oil pipe located on property adjacent to the East River.·

Bankers Trust acquired title to a parcel of real property known as 34–24 Vernon Boulevard, Queens, New York (the "property") by foreclosing on a mortgage it issued to Great Lakes. The property is located in Long Island City on the east shore of the East River, and is bordered on the north by Rainey Park, which is owned by the City of New York. A warehouse which has an oil-fired furnace and oil tanks beneath the boiler room to store the fuel oil is situated on the property.

Plaintiffs procured from Hartford two insurance policies: General Liability Insurance Policy No. 10 CB 41536 (Plaintiffs' Exhibit 1), which was limited to $100,000. coverage, and Umbrella Liability Policy No. 10 HUB 41540 (Plaintiffs' Exhibit 2), which had a $5,000,000. limit. Under both policies, Hartford agreed to pay all sums plaintiffs would become legally obligated to pay for personal injury or property damage to third persons arising from the ownership and control of the property. The policies, the terms of which are set out in the margin,[1]

---

1. The General Liability Insurance policy provided:

> "The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of ... *property damage* to which this insurance applies, caused by an *occurrence* ...."

"This insurance does not apply:

. . . . .

(k) to *property damage* to
(1) property owned or occupied by or rented to the *insured*,
(2) property used by the *insured*, or
(3) property in the care, custody or control of the *insured* or as to which the *insured* is

exclude "first party" coverage, that is, they do not insure against damage to the plaintiffs' property.

On June 15, 1977, plaintiffs were orally notified by the United States Coast Guard that the property was suspected to be the source of fuel oil polluting the East River and its shores. Written notification was received two days later, together with direction, pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1161, "to remove the pollutant and adequately mitigate its effects" (Plaintiffs' Exhibit 3). Excavation revealed that the source of the leaking fuel was a broken pipe beneath the warehouse on the property.

Clean-up operations ensued. Work was done both off the property (in the East River and Rainey Park), and on the property. The work done in the river consisted of placing a "flotation collar" to contain the oil slick which had developed there. The oil was removed from the river through the use of absorbent "booms" which were collected daily for two years. The contaminated soil in Rainey Park was excavated, and the river bed was "high pressure steam clean[ed]," forcing the oil there to rise to the surface of the river where it could be absorbed and removed by the booms.

The work done on the property consisted first of "plugging" the broken pipe and pumping out the oil in it. To prevent further oil seepage into the river and its shores, the oil was removed from the soil on the property. Trenches were dug and flooded with water to force the oil into the river where it was collected by the booms. Cylindrical concrete tubes were placed in deep holes and the oil pumped out.

Hartford was notified of the pollution problem and plaintiffs' claims under the policies on June 23, 1977. It subsequently retained the engineering firm John B. Drinan Associates, Inc. to inspect the site and review the work done. After Drinan was retained, the firm was consulted on each step subsequently taken to correct the pollution problem. Drinan concurred that the work was done correctly and that the costs were reasonable. Affidavit of John V. Drinan, sworn to November 20, 1980, p. 2.

Plaintiffs sue to recover their expenses incurred in cleaning the oil out of the river and its shores, and in preventing further seepage by removing the oil from the property.

Hartford does not dispute that the work done to clean up the East River and Rainey Park falls within the policies' coverage. It contends, however, that the work done to remove the oil from the soil in plaintiffs' property is excluded from coverage because it was done to correct damages to plaintiffs' own property and not to property of third persons. Hartford argues further that it cannot be determined how much of the costs should be allocated to the work done on the East River and Rainey Park, as opposed to the work performed on plaintiffs' property.

## II.

We agree with plaintiffs that the work done on the property to prevent further oil seepage was as a matter of law within the coverage of the policies. First, it was done to prevent damage to the property of third parties. There is no dispute that the oil seepage was not affecting the use of the property by its owners. Second, Hartford does not dispute plaintiffs' assertion that if the preventive work had not been done, the oil would have continued to seep into the river for a substantial period hereafter, and that plaintiffs—and that ultimately, Hartford—would have had to spend much more to clean up the resulting damage to the river and its shores. Memoran-

for any purpose exercising physical control ...."
The Umbrella Liability Policy provided:
"The Company will indemnify the *insured* for *ultimate net loss* in excess of *underlying limits* or the *self-insured retention*, whichever is the greater, because of ... *property damage*

... to which this insurance applies, caused by an *occurrence* which takes place anywhere in the world.
"This insurance does not apply:
(f) to *property damage* to property owned by any *named insured* ...."

dum of Law in Support of Plaintiffs' Motion for Summary Judgment, p. 10; Affidavit of William J. Kelly, Associate Insurance Officer of Bankers Trust Company, ¶ 17, sworn October 17, 1980. Third, it is Hartford's burden to show that the exclusion applies here. Any ambiguity in an insurance policy—and the policies here are ambiguous as to whether they include costs for preventing third party property damage—must be construed against the insurer. *Greaves v. Public Service Mutual Insurance Co.*, 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959); *American Fidelity Fire Insurance Company v. Pardo*, 32 A.D.2d 536, 299 N.Y.S.2d 521 (2d Dept. 1969). The insurer also bears the burden to show that an exclusionary clause applies. *Sincoff v. Liberty Mutual Fire Insurance Company*, 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962); *American Fidelity Fire Insurance Company v. Pardo*, 32 A.D.2d 536, 299 N.Y. S.2d 521 (2d Dept. 1969). Fourth, because the policies are ambiguous as applied to this situation, the proper construction is one that yields a reasonable result. *Pittsburgh Coke & Chemical Company v. Bollo*, 421 F.Supp. 908, 928 (S.D.N.Y.1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977); *Hong Kong Export Credit Insurance Corp. v. Dun & Bradstreet*, 414 F.Supp. 153, 158 (S.D.N.Y.1975); *Aron v. Gillman*, 309 N.Y. 157, 163, 128 N.E.2d 284 (1955). Here, the reasonable result follows plaintiffs' construction: As noted above, if the policy did not cover this situation, plaintiffs could have allowed the oil to continue to pollute the river and its shores, causing further social damage and damage to third parties, and ironically ultimately costing even Hartford more money.

No New York cases have been cited addressing the question whether an insurance policy covering damage to the property of third persons also covers costs to prevent damage to third persons. Plaintiffs rely mainly on *American Economy Insurance Co. v. Commons*, 26 Or.App. 153, 552 P.2d 612 (1976), in which the court held that an insurance policy covering property damage covered the costs by the State of Oregon to fight a forest fire on the insured's property (which had already spread to adjoining properties) to prevent damage to forests in the area. *Commons* held that fire suppression costs are for "property damage," but did not address whether the property damage was to the insured or third persons, and the opinion does not mention an exclusionary clause for damage to the insured's property, such as that involved here. *See also Globe Indemnity Company v. People*, 43 Cal.App.3d 745, 118 Cal.Rptr. 75 (1974). Although for this reason *Commons* is not directly applicable, it is consistent with the conclusion that work done on a first party's property to prevent property damage to third persons is a reasonable construction of the policies at hand.[2]

## III.

Hartford argues that an action for judgment declaring whether the work done on plaintiffs' property was excluded from coverage is a condition precedent to the filing of this lawsuit under the term of the policies which reads:

"*Action Against Company* No action shall lie against the company unless, as a

---

2. Plaintiffs' remaining arguments are without merit. First, they argue that Hartford is estopped from denying liability because of its statements acknowledging liability. However, throughout Hartford has maintained consistently that it is not liable for the work done on the property because it was not for damage to third person's property. Second, they contend that because the Coast Guard ordered them to clean the oil out of the soil on their own property, the cost of this work was an amount they were obligated to pay for damages to the property of third persons. However, it does not follow that because plaintiffs were obligated by the Coast Guard directive to perform the work,

the damage occurred to the property of third persons. The Coast Guard may have ordered plaintiffs to correct a condition which had caused damage to their own property only. Third, the plaintiffs rely on section 46(14) of the New York Insurance Law which defines "property damage liability insurance" as "insurance against legal liability of the insured, and against expense incident to a claim of such liability." Whatever the statutory definition, the language of the policies issued here controls. Moreover, this section does not address the distinction between third party and first party damage.

condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by a judgment against the *insured* after trial or after written agreement of the *insured,* the claimant and the company." (emphasis in original)

Hartford's argument appears to be that plaintiffs should be required to bring another action styled as one for declaratory judgment and then refile this action. There is no reasonable basis for requiring plaintiffs to file a separate suit, when the complaint here may be amended to seek the appropriate declaratory relief.

If plaintiffs submit an amended complaint seeking declaratory relief within 30 days, it will remedy whatever defect exists.[3]

### IV.

 Plaintiffs also sue for counsel fees, pre-judgment interest and the amount Hartford has been allegedly unjustly enriched by virtue of its refusal to pay the money plaintiffs assert was clearly owing to them, and which they say Hartford acknowledged was owing to them. Hartford denies both that the money was clearly owing to plaintiffs and that it has made any such acknowledgement. Rather, Hartford contends the facts before the court raised novel questions which required exploration of several possible policy exclusions arising from plaintiffs' prior knowledge of the leak, the so-called pollution exclusion, in addition to the question of first party property damage. Hartford argues further that even after it decided that the first two exclusions did not apply and it acknowledged that it was liable for the work done in the East River and Rainey Park, it could not be determined from the receipts submitted by plaintiffs how much of the expense was attributable to work done off of plaintiffs' property.

3. Hartford raises in its answer several affirmative defenses which plaintiffs dispute in their moving papers, but which Hartford does not address in its response to this motion, including the failure to mitigate damages, the failure to give timely notice of the occurrence, and that

The record is not clear as to whether Hartford had a reasonable basis for initially raising the now abandoned defenses, or whether it could not have been determined by Hartford, whose engineer was consulted on the work and given an explanation of the receipts, how much of the expense was attributable to work done on plaintiffs' property. Accordingly, decision is deferred for development of the record on the question whether Hartford unjustifiably refused to pay for at least the amounts spent on cleaning up Rainey Park and the East River.

\*     \*     \*     \*     \*     \*

The motion for summary judgment is granted to the extent indicated above.

It is so ordered.

plaintiffs cannot recover for costs of cleaning up the oil discharged after June 15, 1977 (the date plaintiffs received the Coast Guard's notice of the discharge). We assume that Hartford has waived these defenses.