**UNIGARD MUTUAL INSURANCE COMPANY, a corporation; Transamerica Insurance Company, a corporation; Transportation Insurance Company, a stock insurance company; and St. Paul Fire & Marine Insurance Company, a corporation, Plaintiffs,**

v.

**McCARTY'S, INC., an Idaho corporation; William N. McCarty; Betty McCarty; Michael McCarty; Terry McCarty; Sherry McCarty Christianson; Richard McCarty; and Dayna McCarty, Defendants.**

Civ. No. 83–CV–1441.

United States District Court,
D. Idaho.

July 22, 1988.

John P. Howard, Quane Smith Howard & Hull, John Magel, Elam Burke & Boyd, Richard B. Kading, Scott D. Hess, Eberle Berlin Kading Turnbow & McKlveen, Boise, Idaho, Mitchell L. Lathrop, Jeffrey L. Fillerup, Debra Baker Davis, Adams Duque & Hazeltine, San Diego, Cal., for plaintiffs.

R.B. Rock, Moffatt Thomas Barrett Rock & Fields, G. Lance Salladay, Risch Goss Insinger & Salladay, Boise, Idaho, William J. Keppel, Dorsey & Whitney, Great Falls, Mont., for intervenors.

McCarty's Inc., Pocatello, Idaho, pro se.

William N. McCarty, Pocatello, Idaho, pro se.

Betty McCarty, Pocatello, Idaho, pro se.

Michael McCarty, Pocatello, Idaho, pro se.

Terry McCarty, Pocatello, Idaho, pro se.

Sherry McCarty Christianson, Pocatello, Idaho, pro se.

Vern E. Herzog, Pocatello, Idaho, for Richard McCarty and Dayna McCarty, defendants.

## MEMORANDUM DECISION

CALLISTER, District Judge.

The Court has before it motions for summary judgment filed by all plaintiffs. Consideration of these motions was delayed for a considerable time as defendants attempted to secure legal counsel. The defendants filed a response brief on June 23, 1988, and the Court allowed two other parties (Pacific Hide & Fur, Inc., and Idaho Power Company) to file an amicus brief. The matter has now been fully briefed and is at issue. The Court must determine whether there exist any genuine issues of material fact. *See* Fed.R.Civ.P. 56(c).

In this action, four insurance companies seek a declaratory judgment that they owe no duty to defend or indemnify defendants in two pending actions growing out of the disposal of polychlorinated biphenyls (PCBs). Defendant McCarty's, Inc., was an Idaho corporation operating a scrap metal recycling business on a thirty-acre parcel of land in Pocatello, Idaho, from 1949 to 1979. In August 1979, McCarty's, Inc., ceased operations, and title to a portion of the scrapyard property was ultimately distributed to defendants Michael, Terry and Sherry McCarty. The remainder of the property was sold to Pacific Hide & Fur, Inc. (Pacific), a Montana corporation also engaged in the recycling business.

In March 1983, agents of the Environmental Protection Agency (EPA) discovered PCB's in the scrapyard property. On March 13, 1983, the EPA sued the individual McCartys and Pacific in federal court alleging that PCB liquid leaked into and contaminated a large amount of soil. The EPA action was brought under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and seeks to prevent further PCB disposal and to recover the Government's cost of cleaning up the contaminated soil.

In August 1983, Pacific sued McCarty's, Inc., in Idaho state court alleging that McCarty's, Inc., committed deceit and misrepresentation in selling the scrapyard land in 1979 without revealing the presence of PCBs on the property. The complaint also contains a claim for indemnification alleging that McCarty's, Inc., should indemnify Pacific for any damages Pacific must pay in the EPA cleanup action.

The EPA has already engaged in some cleanup activity. The EPA initiated an "emergency response action" during which

it removed some of the PCB contaminated soil along with over 500 PCB-filled capacitors. On September 30, 1986, the parties to the EPA action filed a stipulation and partial consent decree. In paragraph 12 of that decree, the defendants were given the responsibility to implement a Remedial Investigation and Feasibility Study (RI/FS). The defendants commissioned Horne General Contractors, Inc. (Horne), to complete the RI/FS, and Horne in turn hired Retec Remediation Technologies, Inc. (Retec) to actually prepare the study. That study is now completed and was filed with the Court on March 29, 1988. Its findings are the basis for plaintiffs' motions for summary judgment. The EPA has filed a response to the RI/FS which is also within the court record.

In the pending summary judgment motions, the plaintiffs argue that their insurance policies contain an owned-property exclusion which absolves them from any duty to defend or indemnify defendants in the EPA cleanup action. That owned-property exclusion states that no insurance is provided for "property damage ... to property owned by the insured." Plaintiffs argue that the RI/FS establishes that the PCB contamination "is confined exclusively to property owned by the insured at the time of the occurrence." *See* Brief of Transamerica filed May 2, 1988, at p. 16. Plaintiffs cite from the RI/FS to support their argument. The study concludes that there is no imminent "hazard to the population of or the environment due to the contamination at this site. No migration off-site has occurred." *Id.* at Vol. 1, p. 6.[1] The study states that the PCBs have remained in the shallow soils where they were deposited and have not spread to adjacent lands or into the ground water. The risk of future PCB migration to adjacent lands or ground water was calculated as "extremely low." *See* Report at Vol. 1, pp. 54–55. From

these findings, plaintiffs conclude that the "property damage," if any, is confined totally to the insureds' own property and is therefore excluded from coverage.

The insurance companies have the burden of proving that an exclusionary clause in the policy is applicable. *See Harman v. Northwestern Mutual Life Insurance Company*, 91 Idaho 719, 429 P.2d 849 (1967). The alleged exclusion cannot be extended by interpretation or implication, and must be accorded a strict and narrow construction. *See Miller v. Farmers Insurance Company of Idaho*, 108 Idaho 896, 702 P.2d 1356 (1985). A number of courts have held that the owned-property exclusion is not applicable where the underlying complaint alleges that measures must be taken to prevent damage to the "environment" or "public health." *See United States v. Conservation Chemical Company*, 653 F.Supp. 152 (W.D.Mo.1986); *Consolidated Railways Corp. v. Certain Underwriters at Lloyds*, Case No. 84–2069, 1986 WL 6547 (E.D.Pa. June 3, 1986); *Bankers Trust Company v. Hartford Accident Indemnity Company*, 518 F.Supp. 371 (S.D.N.Y.1981), *vacated* 621 F.Supp. 685 (S.D.N.Y.1981).[2] That is precisely what is alleged by the EPA's complaint in this suit:

> There was and is an imminent and substantial endangerment to the public health and welfare and the environment because of actual and threatened releases of hazardous substances from the Pacific site. The Assistant Administrator for Solid Waste & Emergency Response of EPA, to whom the authority to do so has been delegated, has made and does hereby make the determination of the existence of such endangerment under section 106(a) of CERCLA.

1. The Court assumes, without deciding, that the RI/FS is admissible for summary judgment purposes.

2. The original decision in the *Bankers Trust* case held that cleanup costs incurred to prevent future pollution damage were covered by the term "property damage" in the insurance policy. This reasoning was never refuted in subsequent

decisions. However, the judge did vacate that original decision, not because of any flaw in his reasoning, but because he wanted to give one party additional time to file affidavits on a factual matter. Thus, the vacation of the opinion does not diminish the reasoning employed therein.

*See* Second Amended Complaint of EPA at paragraph 53, p. 16.

Although the RI/FS indicates there is little potential for future migration of PCBs, the EPA response to the RI/FS is more cautious. In discussing the option of taking no action to clean up the site further, the EPA states:

> The no action alternative provides minimal reduction in the potential for long-term direct contact with contaminants due to placement of a thin soil cover and improvements to the fence. It has no impact on ground water conditions but also causes no significant increase in short-term risks. This alternative is judged below the median in reducing public health risks since the contaminated materials remain on-site with only a thin cover to protect against direct contact and airborne releases. Further, infiltration of precipitation into and through the PCB material is not significantly reduced with this alternative.

*See* paragraph 4.1.2 of EPA Response at p. 4.

■ When the EPA report is read in conjunction with the RI/FS, it is clear that questions of fact exist about the potential for future PCB contamination of adjoining lands. But the plaintiffs argue that more than potential damage is needed to trigger coverage, and that because no actual harm to adjoining lands has been established, no "property damage" has occurred under the terms of the policy.

The three cases cited earlier (*Conservation Chemical, Consolidated Railways,* and *Bankers Trust*) all held that the term "property damage" did encompass hazardous waste cleanup costs incurred to prevent future damage to the public. Unfortunately those cases contained little analysis of the policy language itself. To resolve this issue the Court must examine the terms of the policies themselves.

The term "property damage" is defined in these policies as "injury to or destruction of tangible property." The plaintiffs argue

that because there is no demonstrable damage to adjoining lands, there is no "property damage." But the term "property damage" is not defined to be limited to damage to adjoining lands—the definition just quoted includes damage to the insureds' own property. Obviously the cost of repairing the insureds' own property for the insureds' benefit cannot be recouped because of the exclusionary provision which denies coverage for "property damage to property owned ... by ... the insured." But this exclusion does not prevent coverage for *liability to third parties* caused by property damage to the insured's property. In fact, when the broad definition of "property damage" is read together with the exclusion and the policies' introductory paragraph on liability,[3] it is clear that coverage is expressly provided when the insured becomes liable to third parties for events confined exclusively to the insureds' premises. A careful reading of the policies shows that while coverage is excluded for the actual *property damage* to the insureds' property, coverage is extended for *liability to third parties* caused by that property damage. In this suit the EPA alleges that the PCB dumping has harmed the environment and endangered the public. The EPA is not bringing this suit to restore defendants' land for defendants' benefit. Instead, the suit is brought on behalf of a third party—the public. The policy provides third-party coverage. Thus the Court cannot find as a matter of law that coverage is excluded under the owned-property provision.

■ The plaintiffs argue next that the alienated-property exclusion prevents coverage. That exclusion provides that there is no coverage for "property damage to premises alienated by the named insured arising out of such premises or any part thereof." Once again, this exclusion only prohibits coverage for property damage to alienated premises, not liability to third parties. Where suit is brought simply to restore the premises for the benefit of the

---

**3.** The introductory paragraph on liability provides that the insurance company "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies."

new owner, the exclusion clearly applies. But here the EPA suit seeks recovery for damage to the public and the environment. There is no exclusion covering such a suit. Thus the Court cannot hold as a matter of law that the alienated-property provision excludes coverage of monies sought in the EPA cleanup suit.

■ The plaintiffs next seek a declaration that they have no duty to defend or indemnify the defendants in the state court action entitled *Pacific Hide & Fur Depot, Inc. v. McCarty's Inc.*, Case No. 38818–B (hereinafter referred to as the Pacific action). As previously discussed, Pacific alleges in that action that McCarty's, Inc., committed deceit and misrepresentation in selling a portion of the scrapyard property in 1979 without revealing the presence of PCBs on the property. The complaint also contains a claim for indemnification based on the 1979 contract. In a memorandum decision filed June 5, 1987, this Court held that plaintiff St. Paul Insurance Company had no duty to defend or indemnify defendants in the Pacific action. The Court found that assuming, without deciding, that the state court action alleges some "damage" covered under the policy, the record establishes that the damage occurred in 1979 when the land was sold and the misrepresentations allegedly made. St. Paul's policy was clearly not in effect during 1979 and hence the Court granted summary judgment to it. The other defendants did not move for summary judgment on this issue at that time and thus the Court expressed no opinion on their liability. The other plaintiffs have now raised this issue. It is clear that plaintiffs Transamerica and Unigard did not provide policies of insurance to the defendants in 1979 and thus are entitled to summary judgment concerning the Pacific action. Plaintiff Transportation Insurance Company (Transportation) did provide a policy during 1979 and thus cannot be relieved of coverage on the same ground available to the other plaintiffs.

As discussed previously, Transportation's policy does not exclude coverage for the EPA cleanup action. The Pacific action contains claims for indemnification and contribution which allege that if Pacific is found liable to the EPA, Pacific is entitled to recoup its losses from the defendant McCarty's, Inc. If the indemnity or contribution claims are ultimately successful, McCarty's, Inc., would essentially be liable for the EPA cleanup costs which are not excluded by Transportation's policy. Thus, with regard to the indemnification and contribution claims, the Court cannot hold that Transportation has no duty to defend or indemnify McCarty's, Inc. With regard to any other damages Pacific seeks in order to restore the property sold to it by McCarty's, Transportation's policy clearly excludes coverage under the alienated-property provision discussed earlier. Because at this time it is impossible to determine which claims will ultimately prevail, the Court holds that Transportation has a duty to defend McCarty's, Inc., in the Pacific action and to indemnify McCarty's, Inc., if the indemnification and contribution claims prevail but has no duty to indemnify on any other claims.

In conclusion, the Court denies the plaintiffs' motions for summary judgment concerning the EPA cleanup action. The Court cannot find as a matter of law that the owned-property exclusion and the alienated-property exclusion prevent coverage in the EPA cleanup action. The Court does, however, grant summary judgment to plaintiffs Transamerica and Unigard on their claim that they owe no duty to defend or indemnify McCarty's, Inc., in the Pacific state court action. The Court denies Transportation's motion for summary judgment on the Pacific state court action and finds that Transportation has a duty to defend McCarty's, Inc., in that action and to indemnify McCarty's, Inc., for any recovery Pacific makes on the indemnification and contribution claims but has no duty to indemnify on any other claims.

Finally, two parties have moved to intervene under Fed.R.Civ.P. 24: (1) Idaho Power Company and (2) Pacific Hide & Fur Depot, Inc. Both of these parties are defendants in the EPA action and are exposed to liability for the cleanup costs. Their liability could be substantially in-

creased if the McCartys are found to have no insurance coverage. Thus, both parties seeking to intervene in this action have much at stake. In a normal situation, the McCartys might be able to fully litigate the insurance coverage issues. But here, the McCartys, due to a shortage of resources, have had great difficulty in obtaining and retaining counsel. This action requires vigorous and time-consuming litigation because the parties are exposed to millions of dollars of potential liability. Under these circumstances, the Court finds that intervention is warranted. *See* Fed.R.Civ.P. 24(b); *Blake v. Pallan*, 554 F.2d 947 (9th Cir.1977).