Henry H. CLAUSSEN, Plaintiff,

v.

The AETNA CASUALTY & SURETY COMPANY, Defendant.

No. CV 185–248.

United States District Court,
S.D. Georgia,
Augusta Division.

Dec. 7, 1990.

---

David E. Hudson, Augusta, Ga., for plaintiff.

Michael R. Johnson, Linda B. Foster, John W. Winborne, Neely & Player, Atlanta, Ga., Robert L. Allgood, Allgood & Daniel, Augusta, Ga., for Aetna Cas. & Sur. Co.

A. Montague Miller, Thomas Tucker, Dye, Miller, Tucker & Everitt, Augusta, Ga., for Federal Ins. Co.

Thomas E. McCarter, David A. Handley, Smith, Gambrell & Russell, Atlanta, Ga., for Continental Cas. Co.

Wiley S. Obenshain, III, Fulcher, Hagler, Reed, Obenshain, Hanks & Harper, Augusta, Ga., for Mission Nat. Ins. Co., Mission Ins. Co. and American Assur. Co.

James B. Hiers, Jr., Donald F. Daugherty, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for Highlands Ins. Co.

Robert L. Todd, C. Michael Johnson, Atlanta, Ga., William Byrd Warlick, Augusta, Ga., for Harbor Ins. Co.

## ORDER

EDENFIELD, Chief Judge.

As Yogi Berra once said, "it's like déjà vu all over again." Once again, the Court

is asked to decide the summary judgment motion of the defendant, Aetna Casualty and Surety Company ("Aetna"). Aetna requests summary judgment against the plaintiff, Henry Claussen, on three grounds. First, Aetna claims that Claussen's claim is barred by the "owned property exclusion." Second, Aetna claims that the pollution discharge was "sudden," even as the Georgia Supreme Court has defined the word. Third, Aetna claims that the response costs demanded by the EPA are not "damages" within the meaning of the policy. The Court rejects all three arguments. Aetna's motion for summary judgment is therefore DENIED. Also before the Court is Claussen's motion to amend the complaint, adding a claim under O.C. G.A. § 33-4-6 (1990) for extra damages and attorneys fees. The Court GRANTS the plaintiff leave to file this amended complaint.

## BACKGROUND

Since 1966, Henry Claussen has owned, either individually or through corporations, land in Florida known as Pickettville. In 1968, the city of Jacksonville, Florida contracted to use the site as a landfill. Beginning in 1971, the city dumped industrial and chemical waste there. In 1977, the city closed the site and returned it to Claussen, filled, graded, and seeded.

The parties dispute whether Claussen knew that the city planned to dump toxic wastes on the site. During negotiations of the contract, the city directed Claussen's attorney to impress upon his client the city's need to dump "anything" at Pickettville. Thus, Claussen wrote that the city would have the right to dump "garbage and other debris and material in accordance with [the city's] waste disposal needs." Whether Claussen meant this language to allow the dumping of toxic wastes is a disputed question.

In 1982 the EPA, acting pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9606, 9607 (1988), notified Claussen that it was investigating the release of hazardous materials from the landfill. In June 1982, Claussen met with representatives of EPA and several other potentially responsible parties ("PRPs"). At the meeting, Claussen and the city of Jacksonville agreed to cooperate in remedying the problems at the landfill. They constructed a barrier to prevent spill-off of the toxic materials into a nearby creek. Ultimately, EPA determined that the barrier failed to work; ground water beneath the site had been contaminated by toxic substances. EPA required new remedial investigations and feasibility studies.

Claussen was insured from 1973 to 1985 under comprehensive general liability ("CGL") insurance policies issued by Aetna. The policies stated in relevant part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent, ....

The definition section states: *Property damage* means physical injury to or destruction of tangible property which occurs during the policy period, ...." There were also several exclusion clauses in the policy. The "pollution exclusion" clause, exclusion (f), excludes coverage for pollution-related property damage unless the discharge of pollution is "sudden and accidental." The "owned property" clause, exclusion (k), bars coverage for claims based solely on damage to the insured's property. It reads:

This insurance does not apply:

(k) to **property damage** to
 (1) property owned or occupied by or rented to the **insured**
 (2) property used by the **insured,** or
 (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control....

Although Aetna had notice of the EPA proceedings, it declined to defend Claussen or to reimburse him for the sums he was obligated to pay to clean up the site. Claussen sued, seeking a declaratory judgment that under the CGL policies, Aetna must defend Claussen and cover Claussen's costs incurred in connection with EPA's demand that he investigate the site and prepare and implement a plan for eliminating the environmental concerns on the Pickettville property.

On August 22, 1986, the defendant Aetna filed a motion for summary judgment, claiming, among other things, that it was not obligated under the CGL policies because of the "pollution exclusion" clause. On August 11, 1987, this Court ruled in Aetna's favor on this motion. The Court held that "sudden" had a temporal meaning and that the release of pollutants at the Pickettville site was gradual. *Claussen v. Aetna Casualty & Sur. Co.*, 676 F.Supp. 1571, 1580 (S.D.Ga.1987). The Court did not rule on the defendant's other grounds for summary judgment. The plaintiff appealed to the Court of Appeals for the Eleventh Circuit, which certified a question to the Georgia Supreme Court. 865 F.2d 1217 (11th Cir.1989). Essentially, the Eleventh Circuit asked for the Georgia Supreme Court's definition of "sudden." The Georgia Supreme Court unfortunately declared that the word had two possible meanings, "abrupt," the meaning this Court found, and "unexpected and unintentional." *Claussen*, 259 Ga. 333, 338, 380 S.E.2d 686 (1989). The Georgia Supreme Court construed the word in favor of the insured, to mean "unexpected or unintentional." The Eleventh Circuit then remanded the case for further consideration. 888 F.2d 747 (11th Cir.1989).

Aetna now renews its motion for summary judgment. In addition, Claussen requests leave to amend the complaint, adding a claim of bad faith refusal to afford coverage to the plaintiff.

## ANALYSIS

### I. The Owned Property Exclusion

As noted above, Aetna's insurance policy did not cover claims based solely on damages to Claussen's property. According to Aetna, the pollution discharge from the Pickettville property damaged only the ground water beneath Claussen's own land. Aetna notes that under Georgia law, a property owner owns all that is below and above his property. O.C.G.A. §§ 44–1–2(B); 51–9–9; *City of Hawkinsville v. Clark*, 135 Ga.App. 875, 219 S.E.2d 577 (1975). Accordingly, Aetna asserts that the environmental disaster at the Pickettville site damaged only Claussen's own property, and Aetna is not liable.

Aetna's argument fails for three reasons. First, under controlling law, Claussen does not own the ground water under his land. Thus, the owned property exclusion does not bar coverage for any damage to the ground water. Second, the toxic dumping damaged not only Claussen's land, but also surrounding land and water. Third, EPA required Claussen to clean up the site to prevent damage to third person's property as well as his own property.

The defendant correctly notes that Georgia law controls this case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that this Court, when sitting in diversity, apply the substantive law that the Georgia state courts would apply. *Id.* That principle applies to Georgia's *whole* law, and therefore this Court must also apply Georgia choice of law rules. *Day & Zimmerman v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 167, 46 L.Ed.2d 3 (1975); see *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Georgia conflicts law, "[t]he rule of *lex loci contractus* controls all substantive matters, such as the nature, construction and interpretation of contracts." *Manderson & Assoc., Inc. v. Gore*, 193 Ga.App. 723, 389 S.E.2d 251 (1989) (citations and emphasis omitted). In determining who owns property, however, Georgia follows the traditional situs rule: "Law governing the title and disposition of land is exclusively subject to the laws of the State where it is situated." *King v. King*, 203 Ga. 811, 817,

48 S.E.2d 465 (1948). The Georgia Supreme Court has emphatically stated:

> Much of the confusion in this branch of the law [conflicts] would not, it is submitted, exist if the courts would merely follow the controlling principle and cease to create exceptions, followed by limitations on the exceptions, and then undertake to distinguish, and to refine the distinctions, and the distinguish the refinements; but instead to follow the course mapped out centuries ago, to wit, that as to contracts affecting realty the law of the State where the land lies will be applied....

*Clark v. Baker,* 186 Ga. 65, 77, 196 S.E. 750 (1938). In this case, although the contracts were made in Georgia, the real property affected is in Florida. Therefore, the Court will follow Florida law to determine who owns the groundwater under Claussen's property.

In Florida, a landowner does not own the ground water under his land. According to the Florida Supreme Court:

> There can be no ownership in seeping and percolating waters in the absolute sense, because of their wandering and migratory character, unless and until they are reduced to the actual possession and control of the person claiming them.... If percolating waters escape naturally to other lands, the title of the former owner is gone....
>
> ....
>
> The right of the owner to ground water underlying his land is to the usufruct of the water and not to the water itself. The ownership of the land does not carry with it any ownership of vested rights to underlying ground water not actually diverted and applied to beneficial use.

*Village of Tequesta v. Jupiter Inlet Corp.,* 371 So.2d 663, 667 (Fla.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (1979). Thus, Claussen does not own the polluted ground water under the Pickettville site. The owned property exclusion, therefore, does not bar coverage.

The second problem with Aetna's argument that the owned property exclusion bars recovery is that evidence suggests that the hazardous substances polluted not only the ground water under Claussen's land, but also water and land surrounding Claussen's property. In the consent order entered on February 10, 1986, EPA included as a conclusion of law: "The presence of hazardous substances at the facility and the present and potential migration of those hazardous substances to off-site soils, ground water, and surface water constitute both an actual and a threatened 'release' as defined in Section 101(22) of CERCLA, 42 U.S.C. Section 9601(22)." Consent Order, at 4. At minimum, therefore, there is a disputed issue of material fact whether the toxic waste polluted property not owned by Claussen. Aetna correctly notes that no neighboring landowners have sued Claussen for property damage; nevertheless, evidence suggests surrounding land and water was damaged.

Finally, even if the pollution had not yet damaged the surrounding land and water, the imminent threat justified cleaning up the site to prevent damage to the surroundings. Other courts have concluded that insurance policies that cover damage to third person's property also cover costs to prevent damages to that property. As one court noted:

> There is no question that "[t]he broad purpose of [a] comprehensive liability insurance policy, so far as it relate[s] to property, [is] to cover [damage to] ... other people's property." ... It is entirely consistent with this purpose to interpret liability policies to cover pollution cleanup activities necessary to *prevent* costly damage to the property of others.

*Allstate Ins. Co. v. Quinn Constr. Co.,* 713 F.Supp. 35, 40–41 (D.Mass.1989) (citation omitted). Construing the insurance policies to cover prevention techniques is the only reasonable result under the circumstances. As the District Court for the Southern District of New York has noted, "if the policy did not cover this situation, the plaintiffs could have allowed the [pollution] to continue to pollute the [surrounding water and land], causing further social damage and damage to third parties, and ironically costing even [the insurance company] more

money." *Bankers Trust Co. v. Hartford Accident & Indem. Co.*, 518 F.Supp. 371, 374 (S.D.N.Y.1981). In essence, the demonstrated danger to third person's property is damage to another's property, which is covered by the insurance policy:

> In the unique context of environmental contamination, where prevention can be far more economical than post-incident cure, it serves no legitimate purpose to assert that soil and groundwater pollution must be allowed to spread over boundary lines before they can be said to have caused the damage to other people's property which liability insurance is intended to indemnify.

*Allstate*, 713 F.Supp. at 41. For these three reasons, it is clear that the owned property exclusion does not bar coverage of the cleanup work in this case.

## II. "Sudden and Accidental" Exception to the Pollution Exclusion

 As noted above, the pollution exclusion clause eliminates coverage for property damage caused by discharge, release or disposal of pollutants, unless the discharge is "sudden and accidental." The Georgia Supreme Court has read "sudden and accidental" to mean "unexpected and unintended." *Claussen*, 259 Ga. at 338, 380 S.E.2d 686. Aetna argues that the insurance policy does not cover the damages at issue here because they were not "unexpected and unintended." The Court disagrees.

Aetna argues that the CGL policy covers discharges, releases or dispersal of pollution only if *no one* expects or intends the release. Aetna insists that Claussen's ignorance (his "head in the sand" defense, as they call it) of the pollution is not dispositive. Instead, "sudden and accidental" should be interpreted objectively rather than from the point of view of the insured. Aetna insists that as long as someone, perhaps an official of the city of Jacksonville,

expected or intended the disposal of toxic substances on the site, Claussen had no insurance coverage for the release of the hazardous materials.[1]

Because the term is ambiguous, the Court should construe it in favor of the insured. As the Georgia Supreme Court stated:

> Under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning. However, if the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred. Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured.

*Claussen*, 259 Ga. at 334–35, 380 S.E.2d 686 (citations and internal quotations omitted).

Aetna, in support of its contention that the term should be interpreted by an objective standard, points to a recent New York Court of Appeals case. That court construed the terms "unexpected and unintentional" objectively in *Powers Chemco, Inc. v. Federal Insurance Co.*, 74 N.Y.2d 910, 548 N.E.2d 1301, 549 N.Y.S.2d 650 (1989), aff'g, 144 A.D.2d 445, 533 N.Y.S.2d 1010 (1988). In *Powers Chemco*, the insured entered into a consent decree agreeing to clean up property polluted by a former landowner. The Court of Appeals held that the discharges were not sudden and accidental because the former owner had intended to bury the waste on the property. The Appellate Division explained: "The relevant factor is not whether the policyholders anticipated or intended the resultant injury or damage, but whether the toxic material was discharged into the environment unexpectedly and unintentionally or

---

1. Even if "unexpected and unintentional" had an objective meaning, summary judgment would be inappropriate. The City of Jacksonville intended to dispose hazardous waste on the Pickettville site, but it is unclear whether it expected the leaching of the waste into the ground water. Because, however, the Court concludes that only the insured's expectations and intentions are relevant, it need not decide whether anyone else actually intended or expected the release.

knowingly and intentionally." 144 A.D.2d at 446, 533 N.Y.S.2d at 1011 (internal quotation omitted).

A recent law review article suggests that the underlying assumption of *Powers Chemco* "runs contrary to eighty years of insurance case law." Ballard & Manus, *Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion*, 75 Cornell L.Rev. 610, 641 (1990). The article explains that insurance policies covering accidental injuries cover injuries caused by the intentional actions of unrelated third persons. *Id.* It quotes a case in which a court rejected a claim that no "accident" had occurred when highwaymen attacked and killed the insured: "[T]he event took place unexpectedly, and without design on [the insured's] part. It was to him a casualty, and in the popular and common acceptation, [an] 'accident.'" *Id.* (quoting *Ripley v. Railroad Co.*, (W.D. Mich.1870), *reprinted in* 2 Bigelow, *Reports of the Life & Accident Insurance Cases*, 738 (1872)). This Court must conclude based on precedent that whether a discharge is "unexpected and unintended" depends on the expectations and intentions of the insured, Claussen. Whether the city intended or expected the release is irrelevant, just as whether the highwaymen intended or expected the injury was irrelevant in *Ripley*.

Dicta in the Georgia Supreme Court's opinion in *Claussen* supports this conclusion. In deciding that "sudden" means "unexpected and unintentional," the court considered several of Aetna's arguments. It noted:

> Finally, Aetna argues that Claussen's proposed interpretation of the policy language contravenes public policy because it encourages the land owner to keep his head in the sand—to remain oblivious to ongoing polluting activities on his land. This argument would be somewhat persuasive, but for the many events that have taken place between the date of this policy and the present lawsuit. "Environmental liability insurance has recently undergone a shift from apparent under-deterrence to apparent over-deterrence of environmental damages." Federal and state laws now require waste treatment facilities to carry insurance for both short and long term environmental risks or to meet a financial test alternative. Insurance companies have become wary of insuring against environmental risks and have either dropped out of the field or are charging higher premiums. In short, the situation has changed so that our decision is not likely to have any serious impact on prospective behavior.

*Claussen*, 259 Ga. at 337–38, 380 S.E.2d 686 (citations omitted). This dicta suggests that a landowner cannot keep his head in the sand because, in today's world, people are acutely aware of environmental dangers. A landowner cannot remain oblivious to ongoing pollution activities on his land because presumably his insurance company will not allow it. If somehow an insured does remain oblivious, as Claussen claims he was, the Georgia Supreme Court assumes that, absent a policy provision to the contrary, the "head in the sand" defense is valid. In other words, it assumes that damage caused by the release of pollutants is covered unless the *insured* expected or intended the release.

For the purpose of this summary judgment motion by the defendant, the Court must construe the facts in favor of Claussen. A jury could reasonably conclude that Claussen did not expect and did not intend the release of hazardous materials into the ground water and the surrounding land and water. In fact, he claims he did not suspect that the city dumped toxic wastes on the site. Whether he did or not cannot be determined at summary judgment.

## III. Response Costs as "Damages"

■ Earlier this year, the Georgia Court of Appeals addressed the issue "whether, as a matter of Georgia law, the insured under a liability policy providing for coverage for 'damages' is afforded coverage for the costs that he incurs in undertaking such remedial pollution measures as are mandated by the EPA." *Atlantic Wood Indus., Inc. v. Lumberman's Underwriting Alliance*, 196 Ga.App. 503, 396 S.E.2d 541 (1990). The court concluded

that these response costs were covered. Aetna urges this Court to reject the Georgia Court of Appeals decision, and to enter summary judgment for Aetna on this issue. The Court declines to do so.

A federal court sitting in diversity may not second guess the state's intermediate appellate supreme court on an issue of state law that the state supreme court has not addressed previously. Instead, a

> federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some *persuasive* indication that the state's highest court would decide the issue otherwise. This is true, even if the federal court does not agree with that state court's reasoning or the outcome which the decision dictates.

*Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 820 (11th Cir.1985) (emphasis added); *see Blanchard v. State Farm Mut. Auto Ins. Co.,* 903 F.2d 1398, 1399 (11th Cir.1990) ("In the absence of Florida Supreme Court precedent, the federal district court was bound by intermediate Florida appellate decisions in this diversity case."). Aetna has produced no evidence that the Georgia Supreme Court would decide the issue differently than the Georgia Court of Appeals did. Instead, Aetna merely questions the Court of Appeals' reasoning. Although Aetna may do so, this Court may not. Under these circumstances, the Court will follow the precedent set by the Georgia Court of Appeals and deny Aetna's motion for summary judgment on this ground.

IV. Claussen's Motion to Amend the Complaint

■ Claussen has moved to amend the complaint to add a claim for damages under O.C.G.A. § 33–4–6 (1982), which allows an insured to recover attorney's fees and punitive damages if an insurance company refuses in bad faith to pay a claim. Aetna contends that the Court should deny the motion to amend because it is untimely and because Aetna will suffer prejudice if the motion is granted. The Court rejects these contentions and grants the motion.

Although Local Rule 6.10 requires parties to amend their complaints within sixty days of the filing of the answer, Rule 15(a) of the Federal Rules of Civil Procedure provides that parties may obtain leave to amend at any time, "and leave shall be freely given when justice so requires." In the interest of justice, the Court will grant Claussen leave to amend. At the start of this litigation, Aetna claimed two good faith defenses to Claussen's claim: that the pollution exclusion clause barred coverage, and that pollution clean-up causes are not "damages." Recently Georgia decisions have stripped Aetna of those defenses. The Court or the jury must decide at some point whether Aetna acted in bad faith.

The proposed amendment that Claussen filed with his motion to amend the complaint is confusing, and the Court grants Claussen five days to file a clearer amendment. For example, Aetna complains:

> The proposed amendment seeks attorney fees from the beginning of the litigation. Either Aetna's alleged bad faith just began and the attorneys' fees would be only available from this point forward or Aetna allegedly has been in bad faith from the beginning and the claim should have been raised in the original complaint.

Brief in Opposition to Plaintiff's Motion to Amend the Complaint, at 3. In his reply brief, Claussen concedes that "any attorney's fees owed would run from the sixty days after the demand letter of July 26, 1990." Reply Brief, at 3. Claussen's amended complaint should reflect this concession. Once Claussen has filed his amended complaint, Aetna will have ten days to file an answer. The Court will allow discovery for an additional ten days on the limited issue of attorney's fees from July 26, 1990 to the present. No other discovery will be permitted at this late date.

## CONCLUSION

The Court rejects each of Aetna's arguments in support of its motion for summary judgment. First, contrary to Aetna's assertions, the pollution damaged property owned by third persons. Consequently, the

owned property exclusion in the insurance policies does not bar coverage of Claussen's claim. Second, the discharge of pollution was not "sudden and accidental" as the Georgia Supreme Court has now defined it. The term means "unexpected and unintended" from the point of view of the insured. Because there is some evidence that Claussen did not expect or intend the discharge of pollution, the Court cannot grant summary judgment for the defendant on this ground. Third, the Court will not reject a Georgia Court of Appeals determination that CERCLA response costs are "damages" within the meaning of a CGL insurance policy. The Court DENIES Aetna's motion for summary judgment.

Claussen has filed a motion to amend his complaint, adding a claim under O.C.G.A. § 33–4–6. Claussen did not include this claim in the original complaint because Aetna appeared to have several good faith defenses to the claim. Recently, Georgia courts have clarified these issues, yet Aetna still refuses to pay the claim. It is the recent refusal to pay that Claussen claims is in bad faith. The Court, therefore, GRANTS the plaintiff's motion to amend the complaint.

SO ORDERED.