**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-8362

_____

D.C. Docket No. CV193-033-DHB


BOARDMAN PETROLEUM, INC. d.b.a
Red & Jack Oil Company,

                              Plaintiff,
                              Counter-Defendant,
                              Appellee,


        versus


FEDERATED MUTUAL INSURANCE
COMPANY,

                              Defendant,
                              Counter-Claimant,
                              Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

**(July 29, 1997)**

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY[*],
Senior Circuit Judge.


PER CURIAM:

_____

[*] Honorable Donald P. Lay, Senior U.S. Circuit Judge for the
Eighth Circuit, sitting by designation.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION.

**TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:**

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves questions of Georgia law that will determine the outcome of the case for the parties. It also appears to this court and the parties that no controlling precedent of the Supreme Court of Georgia or any other Georgia court answers these questions, and that the answers are intertwined with important matters of Georgia public policy. We therefore certify the following questions to Georgia's highest court for resolution. See O.C.G.A. § 15-2-9 (1990); Ga. Sup. Ct. R. 37.[1]

**FACTS**

This case arises out of a dispute over whether an insurer is contractually liable for clean-up costs and defense expenses incurred as a result of underground petroleum contamination at an Augusta, Georgia gas station.

From 1955 to 1986, the appellee, Boardman Petroleum, Inc. (Boardman), leased and operated a gas station (the Smile Station) in the Daniel Village Shopping Center located in Augusta,

_____

[1] Customarily, we request the parties to submit a proposed statement of facts and certificate of issues for decision before certifying a case. In view of the substantial agreement between the parties as to the issues to be decided in this case, we depart from the usual practice and certify based on the materials currently before us.

2

Georgia.  During the years the station operated, Boardman used underground storage tank systems to store and dispense petroleum products.  When Boardman closed the Smile Station in 1986, it had the underground storage tanks removed from the site.  At that time it does not appear that the tanks were leaking or had compromised integrity.  In 1988, however, an environmental consultant discovered petroleum contamination at the Smile Station site during an assessment on behalf of a potential site buyer.  The discovery of contamination eventually led to a lawsuit (the PGC Associates lawsuit) against Boardman in late 1990.  The PGC Associates lawsuit alleged, among other things, that one of the Smile Station tanks leaked petroleum products and other hazardous chemicals that contaminated the site, groundwater and possible surrounding third-party owned property.

In February 1991, Boardman presented the PGC Associates lawsuit to its insurer, Federated Mutual Insurance Company (Federated), the appellant in this case.[2]  In April 1991, Federated accepted defense of the PGC Associates lawsuit under a reservation of rights.  Federated then filed a declaratory judgment action in the United States District Court for the Southern District of Georgia to determine if coverage existed for the claim arising from the PGC Associates lawsuit.  Federated ultimately dismissed its declaratory judgment action without

_____

[2]  Boardman also notified another insurer, but that insurer's liability is not at issue in this case.

3

prejudice in December 1992, following the dismissal without prejudice of the PGC Associates lawsuit.

During the pendency of the PGC Associates lawsuit, Boardman and its insurers performed extensive environmental testing at the Smile Station site. This testing indicated that significant groundwater contamination existed in and around the tank bed that formerly housed Boardman's underground storage tanks. In accordance with Georgia law, in October 1992, Boardman notified the Georgia Department of Natural Resources (DNR) about the results of the testing. In response, DNR wrote Boardman on February 3, 1993, and ordered Boardman to begin corrective action measures to remove the petroleum contamination from the Smile Station site, and to submit additional information regarding the potential impact on surrounding properties. Boardman promptly notified Federated and sought defense and indemnification, but Federated refused to agree. Federated then added the insurance coverage dispute surrounding the Smile Station to a declaratory judgment action pending between the parties regarding another gas station site. Boardman and Federated ultimately settled the pending claims regarding the other site, leaving for litigation only issues relating to the extent of Boardman's coverage under general liability and umbrella insurance policies for the Smile Station site.

Federated issued the general liability policies in dispute between 1977 and 1985, to cover the Smile Station in cases involving property damage to third parties. In addition to the

third-party policies, Federated issued first-party policies to Boardman as part of a special "Petro-Pac Special Multi-Peril" coverage option. Federated also issued umbrella policies to Boardman, providing excess third-party coverage above the Petro-Pac third-party policy limits. The Petro-Pac third-party policies contained the following coverage provisions:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> > A.    bodily injury or
> > B.    property damage
>
> to which this insurance applies, caused by an occurrence . . . .
>
> . . . .
>
> 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
>
> . . . .
>
> 'Property Damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss or use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Boardman interprets these provisions to mean that coverage is triggered when property damage occurs within the policy period even if the property damage is not discovered within the policy period. Federated interprets these provisions to mean that coverage is triggered only when property damage occurs and is discovered within the policy period. Boardman calls its

5

interpretation an "exposure" trigger of coverage rule. Federated calls its interpretation a "manifestation" trigger of coverage rule. Both parties agree that the interpretation issue is subject to Georgia law canons of contract interpretation.

The third-party policies also contain provisions indicating that insurance coverage does not apply "to property damage to . . . (1) property owned or occupied by or rented to the insured[.]" As discussed below, the parties differ markedly on the relevance of the so-called "owned or rented" coverage exclusion provision in this case: Boardman contends the coverage exclusion provision does not apply, Federated contends it does. Again, both parties agree that the interpretation of the coverage exclusion provision turns on Georgia law.

In any event, Boardman eventually arranged to remove 300 gallons of free product gasoline and 440 gallons of gasoline contaminated water from the subsurface groundwater at the Smile Station site. Based upon the fact that the contamination was removed and no longer appeared to threaten migration onto other property, DNR issued a "no further action" letter on February 17, 1996. DNR's letter stated in part:

> Based on the current requirements of the Georgia Underground Storage Tank Act and the Georgia Rules for Underground Storage Tank Management (GUST Rules) and on the final Certification of Completion, the Georgia Environmental Protection Division (EPD) has determined that no further corrective action is required for free product removal and that no additional groundwater monitoring is necessary for the subject site, at this time.

> However, this site could be subject to further corrective action in the future if mandated through

6

more stringent state or federal statutory or regulatory changes, or if drinking water systems are identified or installed within three miles of the site, or if surface water bodies are impacted by the dissolved contaminant plume, or if additional soil contamination and/or free product on groundwater are identified as originating from this site.

On cross-motions for summary judgment, the United States District Court for the Southern District of Georgia adopted Boardman's view on both the trigger of coverage issue and the "owned or rented" coverage exclusion issue. See Boardman Petroleum, Inc. v. Federated Mutual Insurance Co., 926 F. Supp. 1566 (S.D. Ga. 1995). The district court noted that the trigger of coverage issue presents "an important matter of a state's public policy" and noted that the Supreme Court of Georgia could not accept certification from a district court. 926 F. Supp. at 1577 n.2. The district court then proceeded to apply Georgia principles of contract construction and found that an "exposure" trigger applied, i.e., that coverage is triggered when property damage occurs within the policy period even if not discovered within the policy period. 926 F. Supp. at 1578.

Turning to the "owned or rented" coverage exclusion issue, the district court concluded that the coverage exclusion provision did not apply, based on reasoning it applied in Claussen v. Aetna Cas. & Sur. Co., 754 F. Supp. 1576 (S.D. Ga. 1990), a case interpreting a similar coverage exclusion provision under Florida law. Following the entry of the district court's final order, Federated filed this timely appeal.

**CONTENTS**

7

Federated contends that the only trigger of coverage rule that comports with a common sense understanding of the policies at issue here and gives effect to all policy terms is a "manifestation" trigger of coverage rule. Federated maintains that an "exposure" trigger of coverage rule provides no workable principle for determining when liability under a policy arises. More particularly, Federated contends that the "exposure" trigger of coverage rule will lead to a factual and scientific morass as parties litigate to determine when exposure actually happened. Federated argues that the alternative, "manifestation" trigger of coverage rule is workable because it imposes occurrence-based liability only at the time the complaining party suffers tangible damage due to discovery of contamination. In addition, Federated contends that the only Georgia case on point -- a trial court decision -- chose the "manifestation" trigger of coverage rule, and urges the court to follow the Fourth Circuit's decision in Mraz v. Canadian Universal Ins. Co. Ltd., 804 F.2d 1325 (4th Cir. 1986), in applying a "manifestation" trigger of coverage rule to the type of policy involved in this case.

With respect to the "owned or rented" coverage exclusion issue, Federated contends the third-party coverage at issue here contains a clear exclusion for damage to property which Boardman owned or rented, and Boardman purchased first-party coverage in recognition of this exclusion. Federated argues that the contamination in this case was limited to the soil and groundwater under the Smile Station -- both Boardman's property

8

under Georgia law -- and that no contamination ever left the Smile Station and affected neighboring third-party property, or posed a genuine threat to third-party property. As a result, Federated contends, the coverage exclusion provision applied in this case based on the factors set forth in the Claussen decision. In addition, Federated questions whether the Claussen factors should be relied upon at all to determine the applicability of an "owned or rented" coverage exclusion provision.

Boardman contends the district court properly adopted the "exposure" trigger of coverage rule, as the policies at issue only require that damage "occur" during the policy period. Boardman argues that the district court's ruling comports with the plain meaning of the policy terms and that the restrictive trigger of coverage position Federated urges turns an occurrence-based policy into a claims made or discovery-based policy. Boardman also contends that the district court ruled correctly even if the policy terms are "vague," as Georgia law requires that ambiguity be interpreted in favor of the insured. In addition, Boardman contends the district court's decision is in accordance with Eleventh Circuit decisions applying the law of Georgia, Florida and Alabama, all of which have rejected the "manifestation" trigger of coverage rule for comprehensive general liabilities policies. Boardman argues that the "manifestation" trigger of coverage rule is based on a "withering theory" that the overwhelming majority of courts have rejected.

Finally, Boardman also maintains that Federated's reliance on a one paragraph conclusory order from a Georgia trial court, is misplaced, as the "manifestation" trigger of coverage rule adopted in that case did not preclude coverage to the insured.

With respect to the "owned or rented" coverage exclusion, Boardman contends the district court's ruling is correct because Boardman is not seeking to collect for damage to its own property, but is seeking indemnification for the cost of the DNR ordered clean-up to prevent the spread of contamination. Boardman points to cases from the Sixth and Seventh Circuits holding that "owned or rented" coverage exclusion provisions do not apply in such contexts. See Anderson Development Co. v. Traveler's Indemnity Co., 49 F.3d 1128 (6th Cir. 1995); Patz v. St. Paul Fire & Marine Ins. Co., 15 F.3d 699 (7th Cir. 1994). Boardman also notes that under Georgia law, Federated, not Boardman, has the burden of showing that the factual situation at issue here falls within the exclusion. See Welch v. Prof'l Ins. Corp., 231 S.E.2d 103 (Ga. 1976). Boardman further notes that exclusions are to be strictly construed against the insurer.

Boardman also argues that Federated failed to meet its burden here for several reasons in addition to the one cited above. First, Boardman contends that Federated distorts the scope of Boardman's first-party coverage, using it as both a sword and a shield: suggesting in its brief that the first party-coverage regulates the property damage involved here, but maintaining in correspondence to Boardman that the coverage does

10

not extend to the type of damage involved here.  Second, Boardman contends that Federated presented no evidence to support its contention that the petroleum contamination at issue here did not threaten damage to third-party property.

Finally, Boardman implicitly argues that <u>Claussen</u> delineates the appropriate factors to consider when evaluating an "owned or rented" coverage exclusion.

**QUESTIONS TO BE CERTIFIED**

We certify the following questions:

1. WHAT IS THE APPROPRIATE TRIGGER OF COVERAGE UNDER GENERAL LIABILITY POLICIES SUCH AS THE ONES AT ISSUE IN THIS CASE?

2. DOES AN "OWNED OR RENTED" COVERAGE EXCLUSION IN GENERAL LIABILITY POLICIES SUCH AS THE ONES AT ISSUE BAR COVERAGE OF ALL OR A PORTION OF AN INSURED'S CLAIMS FOR INDEMNIFICATION FOR THE COST OF A STATE ORDERED CONTAMINATION CLEAN-UP WHEN THAT CLEAN-UP INVOLVES SOIL AND GROUNDWATER CONTAMINATION WHICH HAS NOT YET DAMAGED SURROUNDING SOIL AND/OR GROUNDWATER?

Our statement of the questions is intended as a guide and is not meant to restrict the inquiry of the Supreme Court of Georgia.

> The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case.  This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

<u>Martinez v. Rodriguez</u>, 394 F.2d 156, 159 n.6 (5th Cir. 1968). The clerk of this court shall transmit this certificate, as well

11

as the briefs and record filed with the court, to the Supreme Court of Georgia. In addition, the clerk shall transmit copies of the certificate to the attorneys for the parties.

**QUESTIONS CERTIFIED.**