## McGRAW-EDISON COMPANY, Plaintiff,

v.

## SPEED QUEEN COMPANY, Raytheon Company and Employers Insurance of Wausau, a Mutual Company, Defendants.

### No. 90-C-654.

United States District Court, E.D. Wisconsin.

July 29, 1991.

Gray, Plant, Mooty, Mooty & Bennett by Maclay R. Hyde, Minneapolis, Minn., Cohen & Grigsby by Michael H. Ginsberg, Pittsburgh, Pa., Michael, Best & Friedrich by Arvid A. Sather, Madison, Wis., for McGraw-Edison Co.

Davis & Kuelthau by Michael R. Wherry, Milwaukee, Wis., Zelle & Larson by Richard M. Hagstrom, Minneapolis, Minn., for Employers Ins. of Wausau.

DeWitt, Porter, Huggett, Schumacher & Morgan by Richard Lewandowski, Madison, Wis., for Speed Queen Co. and Raytheon Co.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On June 28, 1990, McGraw-Edison Co. filed this action, which consists of the following: a claim under the Comprehensive Environmental Response Compensation and Liability Act [CERCLA], 42 U.S.C. § 9601 et seq., against Speed Queen Co. and Raytheon Co.; breach of contract claims under state law against Speed Queen Co. and Raytheon Co.; and breach of insurance contract claims under state law against Employers Insurance of Wausau [Wausau Insurance]. Wausau Insurance has filed a motion to dismiss the claims against it or, in the alternative, to stay proceedings pending the resolution of an action filed in Illinois state court. Wausau Insurance's motion to dismiss will be granted.

### I.

For purposes of ruling on Wausau Insurance's motion, a challenge to the sufficiency of the complaint, the court is obligated

to accept as true the well-pleaded factual allegations of the complaint, *see Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987). A brief review of those factual allegations is helpful under the circumstances.

Defendant Speed Queen is a corporation engaged in the business of manufacturing laundry products and kitchen appliances. Prior to November 1979, present-day Speed Queen was the laundry products division of McGraw–Edison. On October 31, 1979, that division was sold by McGraw–Edison to defendant Raytheon, pursuant to a written sales agreement [the sales agreement]. After the sale, Speed Queen conducted operations as a wholly-owned subsidiary of defendant Raytheon, also a corporation. (Because the two corporations are defending this action jointly, they will be referred to collectively, where appropriate, as "Speed Queen/Raytheon.")

McGraw–Edison (before the sale) and Speed Queen/Raytheon (after the sale) operated a manufacturing facility in Ripon, Wisconsin [the Speed Queen site]. One section of the sales agreement provided for Raytheon's assumption of McGraw–Edison's existing civil liabilities arising out of the operation of the Speed Queen site as of the closing date of the sale, except for those for liabilities as to which McGraw–Edison was insured. Defendant Wausau Insurance was McGraw–Edison's primary liability (and, in some years, excess liability) insurer at the Speed Queen site pursuant to some seven general liability policies purchased between the years 1967 and 1972—well before the sale. One week after the sale, on November 6, 1979, McGraw–Edison and Speed Queen executed an assignment [the assignment]. The assignment, guaranteed by Raytheon pursuant to the original sales agreement, caused Speed Queen to "assume and agree to pay" on behalf of McGraw–Edison any civil liabilities arising out of the operation of the Speed Queen site as of October 31, 1979.

On March 4, 1980, an investigator for the Wisconsin Department of Natural Resources [Wisconsin DNR] observed Speed Queen/Raytheon disposing what were suspected to be hydrocarbon wastes in a municipal landfill operated by the City of Ripon. For many years this landfill received the daily waste of the Speed Queen manufacturing facility. Subsequent investigation and monitoring by the Wisconsin DNR and the United States Environmental Protection Agency [EPA] disclosed that ground water in the vicinity of the landfill was contaminated with volatile organic compounds later identified as, among other things, dichloroethylene, trichloroethylene, and vinyl chloride. On January 17, 1990, the Wisconsin DNR issued a formal determination that included findings that the ground water was contaminated; that the private water supply (a water well) of at least one nearby family, the Bosvelds, had also been contaminated; and that the vinyl chloride levels of the affected water supplies exceeded the state's health standards, rendering that water unfit for human consumption.

These findings predictably sparked finger pointing—and litigation. Eventually, McGraw–Edison (and a number of other undisclosed parties) entered into a settlement agreement of a suit filed by the Bosvelds. Nevertheless, due to the practically indelible nature of CERCLA liability, the spectre of a multiplicity of adverse civil judgments looms over McGraw–Edison as the extent of ground water contamination and other environmental harm to other persons caused by the Ripon landfill is realized—despite the fact that McGraw–Edison has had no connection with the Speed Queen site since 1979.

McGraw–Edison now looks to Speed Queen/Raytheon, asserting that liability for contamination had been assumed by Speed Queen/Raytheon pursuant to the sales agreement and the assignment. McGraw–Edison also asserts that Wausau Insurance is obligated to provide insurance coverage for such liability, at least to the extent that the events giving rise to the environmental harms occurred between the years 1967 and 1972. McGraw–Edison has already acquiesced in the denial of coverage by each of its other insurers during the relevant period of time, apparently in recognition of the fact that its policies with

those other insurers contained so-called "pollution exclusions."

## II.

McGraw–Edison's complaint includes seven counts. Only Counts V, VI, and VII are directly challenged by Wausau Insurance's motion to dismiss. Nevertheless, the nature of the motion calls upon the court to review each count of the complaint in turn.

The first four counts are directed at Speed Queen/Raytheon *alone*. Count I seeks a declaration that Speed Queen/Raytheon is liable under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as a person who "by contract, agreement or otherwise, arranged for disposal ..., or arranged with a transporter for transport for disposal ... of any hazardous substances owned or possessed by such person ... at any facility ... from which there is a release or a threatened release which causes the incurrence of response costs." In this count, McGraw–Edison (conclusorily) asserts that it has incurred response costs consistent with the National Contingency Plan as defined in § 101(25) of CERCLA, 42 U.S.C. § 9601(25); presumably the costs referenced by this count include, at least, those incurred in making reparations with the Bosveld family.

Counts II, III and IV arise under state law and pertain to agreements between McGraw–Edison and Speed Queen/Raytheon. Count II asserts that by virtue of the 1979 sales agreement with McGraw–Edison, Speed Queen/Raytheon agreed to assume the obligations and liabilities associated with environmental contamination. That count charges that by letter of July 17, 1987, McGraw–Edison advised Speed Queen/Raytheon of its obligations but that by letter of August 21, 1987, Speed Queen/Raytheon denied those obligations and refused to indemnify McGraw–Edison, which constituted a breach of the sales agreement.

Count III, which is based upon the allegations of Count II, charges that Raytheon, the parent company of Speed Queen, violated its obligations under the assignment to guarantee unconditionally the performance of all conditions of the sales agreement. Count IV seeks a declaration (presumably under both the terms of the 1979 sales agreement and the assignment) that Speed Queen/Raytheon must indemnify McGraw–Edison "for all obligations and liabilities which now, or may subsequently, exist with regard to environmental contamination resulting from the disposal of allegedly hazardous substances generated by the laundry products or kitchen appliance divisions on or before October 31, 1979."

The remaining counts are directed at Wausau Insurance, and each arises under state law. Count V asserts that the claims that have been asserted against McGraw–Edison arise out of the daily disposal of waste at the Ripon landfill between 1967 and 1972 and that each act of disposal was an "occurrence" within the meaning of that term in the insurance policies McGraw–Edison had purchased from Wausau Insurance. That count also asserts that McGraw–Edison performed all conditions required of it under the policies, that it notified Wausau Insurance of the claims asserted against it, but that Wausau Insurance has denied coverage. The count seeks a declaration that the claims arose under the policies, that Wausau Insurance is obligated to defend McGraw–Edison with respect to those claims, and that Wausau Insurance is obligated to indemnify McGraw–Edison for liability flowing from those claims.

Count VI charges that Wausau Insurance's "failure and refusal to defend or indemnify McGraw–Edison in connection with claims based upon [activities prior to 1972] constitutes breach of [the insurance policies]." Count VII is simply an attempt by McGraw–Edison to join in a single count leveled against both Speed Queen/Raytheon and Wausau Insurance what it has already charged separately in Counts IV and V. This count calls for a declaration of the "nature and extent of the respective duties" of Wausau Insurance and Speed Queen/Raytheon.

Notably, McGraw–Edison makes no CERCLA claim (nor any other federal claim) against Wausau Insurance.

## III.

In its motion to dismiss, Wausau Insurance challenges this court's subject matter jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. With respect to subject-matter jurisdiction, McGraw–Edison's complaint states: "This Court has exclusive jurisdiction in this case pursuant to 28 U.S.C.[ ] § 1331 and 42 U.S.C.[ ] § 9613(b). In addition, the Court's jurisdiction over certain claims is based on the doctrine of pendent or ancillary jurisdiction as expressed in *Hurn v. Oursler*, 289 U.S. 238 [53 S.Ct. 586, 77 L.Ed. 1148] (1933)[,] and *United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966)." *See* Complaint at 3, ¶ 6. Although McGraw–Edison suggests in its brief that there exists an alternative basis of federal jurisdiction over Wausau Insurance—diversity of citizenship—the court will not explore the matter. The present motion is directed to the complaint alone, which states no such basis for jurisdiction.

Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), states that (with exceptions not implicated here) "the United States district courts shall have exclusive original jurisdiction over all controversies arising under [CERCLA], without regard to the citizenship of the parties or the amount in controversy." The court has no quarrel with McGraw–Edison's use of § 113(b) of CERCLA, along with the general federal question jurisdictional statute, 28 U.S.C. § 1331, to bring defendant Speed Queen/Raytheon into federal court, given the existence of McGraw–Edison's CERCLA claim against that defendant. Nor does it have any quarrel with the proposition that McGraw–Edison, having haled Speed Queen/Raytheon into this federal court, may assert additional pendent state law *claims* arising out of a common nucleus of operative fact with the CERCLA claims under the well-established rule of *Gibbs*. Speed Queen/Raytheon has not sought dismissal of the claims against

it, but it has filed a brief in opposition to Wausau Insurance's motion to dismiss.

An examination of the complaint discloses that McGraw–Edison's only apparent basis for invoking federal jurisdiction over its claims against defendant Wausau Insurance is the oft-questioned doctrine of "pendent *party* jurisdiction," which was greatly narrowed, if not virtually eliminated, by the rule enunciated in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

In *Finley*, the Supreme Court drew a sharp distinction between pendent claims and pendent parties. The Court cautioned that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley*, 490 U.S. at 556, 109 S.Ct. at 2010. *See also Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Relying upon the constitutional principle that federal courts are courts of limited jurisdiction, which must be defined by statute, the Court limited "pendent party jurisdiction" to those instances where the statute granting federal jurisdiction expressly authorizes it. *Finley*, 490 U.S. at 550, 109 S.Ct. at 2007; *Aldinger*, 427 U.S. at 17, 96 S.Ct. at 2421. Even the fact that the party seeking to bring the added claims against the would-be pendent party has little choice but to be in federal court, without more, is not enough to authorize the exercise of such jurisdiction, *see Finley*, 490 U.S. at 552, 109 S.Ct. at 2008.

■ Accordingly, the court has examined § 113 of CERCLA, 42 U.S.C. § 9613, which authorizes civil proceedings under CERCLA, to determine whether that section expressly authorizes pendent party jurisdiction. There is no suggestion that § 113 authorizes the inclusion in a single federal action under CERCLA of pendent parties against whom only state claims are brought. The matter of pendent parties is not mentioned in the statute. Under *Finley*, this necessarily means that Wausau Insurance is not a proper party in this

action in the absence of any federal claims against it. Whether it would be efficient, convenient or economical to include Wausau Insurance in this action is of no moment, *see Finley,* 490 U.S. at 555, 109 S.Ct. at 2010.

 It is true that *Finley* has since been effectively overruled by Congress, *see* 28 U.S.C. § 1367 (codifying a rule of "supplemental jurisdiction" that permits the inclusion of pendent parties in a federal action). In its brief, McGraw–Edison sharply criticizes Wausau Insurance's failure even to cite 28 U.S.C. § 1367, and levels an accusation that Wausau Insurance has misstated the law and engaged in some sort of improper conduct. Of course, as McGraw–Edison ultimately concedes in a footnote, Wausau Insurance was entirely above board in neglecting 28 U.S.C. § 1367. That statute, as McGraw–Edison eventually acknowledges in a footnote contained in its brief, does not apply to this action, which was filed on June 28, 1990, well before the December 1, 1990, effective date of the statute.

I believe that *Finley* governs this action and therefore find that Wausau Insurance should be dismissed from the action for lack of jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure.

Therefore, IT IS ORDERED that defendant Wausau Insurance's motion to dismiss be and hereby is granted.

IT IS ALSO ORDERED that all claims against defendant Wausau Insurance be and hereby are dismissed, without prejudice.