**LaSALLE NATIONAL TRUST, N.A., etc., Plaintiff,**

**v.**

**Jerry SCHAFFNER, et al., Defendants.**

No. 91 C 8247.

United States District Court,
N.D. Illinois,
E.D.

March 24, 1993.

Arthur M. Holtzman, Donald J. Moran, Pederson & Houpt, P.C., Chicago, IL, for LaSalle Nat. Trust.

Daniel Paul Albers, Andrew H. Perellis, Coffield, Ungaretti & Harris, Chicago, IL, for Jerry Schaffner, Martin Schaffner, and Chicagoland Laundry and Cleaners.

Christopher W. Zibart, Hopkins & Sutter, P.C., Claire Seltz Eichner, Chicago, IL, for Nat. Blvd. Bk. of Chicago.

Daniel G. Litchfield, Burditt & Radzius, Chicago, IL, Richard M. Hagstrom, Zelle & Larson, Minneapolis, MN, for Illinois Employers Ins. of Wausau.

Terry M. Cosgrove, Roderick T. Dunne, Peterson & Ross, Chicago, IL, for Continental Cas. Co. and American Cas. Co.

Steven B. Belgrade, Belgrade & O'Donnell, Chicago, IL, Martha J.K. Koster, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, for Liberty Mut. Ins. Co.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff, LaSalle National Trust ("LaSalle"), is legal owner of real property located at 2901 North Clybourn in Chicago, Illinois. Defendants, Jerry Schaffner and Martin Schaffner (the "Schaffners") are residents of Illinois. Defendant, Chicagoland Laundry and Cleaners, Inc. ("Chicagoland") is an Illinois corporation run by the Schaffners and conducting business in this State.[1] Defendant, National Boulevard Bank of Chicago ("National") is an Illinois bank conducting business in this State and was the holder of legal title to the property for the sole beneficial owners, the Schaffners.

According to LaSalle's complaint, the Schaffners operated the Chicagoland dry cleaning business on the property from at least 1980 to approximately January, 1989. In approximately June 1990, plaintiff discovered the presence of tetrachloroethylene/perchloroethylene ("PCE")[2] in the property. Plaintiff believes defendants used PCE on the property and "knew or should have known of the release of PCE and other volatile organic compounds" into the "soil and groundwater at the Property, prior to [LaSalle's] purchase." Compl. at ¶¶ 17, 18. In June 1990, underground storage tanks leaking other known contaminants necessitated soil testing. The tests informed plaintiff of

---

1. Chicagoland and the Schaffners will be referred to as Chicagoland unless otherwise noted.

2. Tetrachloroethylene/perchloroethylene is apparently a chemical used in the dry cleaning business.

the presence of PCE and plaintiff arranged for site cleanup. As of the date of the complaint, defendants had not reimbursed plaintiff for any of the cleanup costs.

On December 28, 1991, LaSalle sued defendants under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–57, for necessary response costs and stated pendent state law claims. Plaintiff's first two causes of action claim violation of CERCLA's strict liability provisions for prior owner/generators. The second cause alleges fraudulent nondisclosure of the PCE contamination in connection with the sale of the property to LaSalle. LaSalle's remaining causes of action allege private and public nuisance, negligent hazardous waste disposal, negligence (all resulting in property damage), trespass and breach of contract. Jurisdiction in this underlying complaint is based on 42 U.S.C. § 9613(b) of CERCLA and 28 U.S.C. § 1331.

On April 17, 1992, Chicagoland and the Schaffners filed a first amended third-party complaint (the "Chicagoland complaint") against Illinois Employers Insurance of Wausau ("Wausau"), Continental Casualty Company ("Continental"), American Casualty Company ("American"), Liberty Mutual Insurance Company ("Liberty") (collectively "the Insurers"), Harper Realty, Inc. and William Levy. Jurisdiction over the third-party action is premised on 28 U.S.C. §§ 1331, 1367 and CERCLA. William Levy and Harper Realty, Inc. are sued as beneficial owners of the current LaSalle trust. Chicagoland and the Schaffners sue the Insurers under policies covering periods from August 1971 to August 1989.

According to the Chicagoland complaint, Chicagoland wrote the Insurers[3] regarding environmental property contamination relating to underground storage tanks and PCE. Liberty and Wausau responded by outlining potential coverage defenses and requesting extensive additional information about the contamination. Chicagoland sent Wausau and Liberty information. Neither Continental nor American responded. From the Summer of 1990 through the Summer of 1991, LaSalle and Chicagoland attempted to investigate the nature and extent of the PCE contamination, receiving conflicting reports regarding approaches to remediation. On November 27, 1991, Chicagoland wrote Insurers to advise that LaSalle had asserted a "pre-litigation demand" due to the PCE contamination and to request that Insurers settle.

### JURISDICTION OVER THIRD-PARTY CLAIMS

On August 8, 1992, this court (Rovner, J.) denied Insurers' motion to dismiss Chicagoland's third-party claims. The Insurers' motion to dismiss argued lack of subject matter jurisdiction over Chicagoland's third-party insurance claims. Fed.R.Civ.P. 12(b)(1). On November 20, 1992, Wausau, Continental and American moved for reconsideration of the jurisdiction issue.

Chicagoland brought the third-party action against Insurers under supplemental jurisdiction, 28 U.S.C. § 1367(a). Section 1367 (effective prospectively for civil actions commenced after December 1, 1990) addresses the Supreme Court's decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In *Finley,* the Supreme Court abolished pendent party jurisdiction lacking an independent jurisdictional basis and cast doubt over the continuing availability of ancillary jurisdiction for similar third-party claims. *See Washington Hosp. Center v. Collier,* 947 F.2d 1498, 1501 (D.C.Cir.1991). Congress responded with amended § 1367, conferring "supplemental jurisdiction" over all claims "so related to claims in [an] action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).

Judge Rovner based her denial of Insurers' motion on § 1367, the D.C. Circuit's holding in *Collier,* and the impleader rule, Fed.R.Civ.P. 14(a). Judge Rovner rejected the Insurers' argument that the underlying CERCLA complaint and the third-party action do not derive from a "common nucleus of operative fact such that they ordinarily would be tried together." The court's order held

---

**3.** Apparently CNA Insurance was notified as agent for American and Continental.

that "the third-party claims against the insurers fall squarely within the Court's jurisdiction under 28 U.S.C. § 1367(a)."

Judge Rovner noted that Chicagoland had followed Rule 14(a) precisely by impleading the Insurers, who "may be liable to [Chicagoland] for all or part of [LaSalle's] claim." "Nothing in 28 U.S.C. § 1367, the new statute codifying the supplemental jurisdiction of the federal courts, alters the propriety of this longstanding impleader practice." Aug. 7, 1992 Op. The *Collier* decision[4] does not apply the more permissive § 1367, but rather concludes that pre–§ 1367 case law, *Finley*, 490 U.S. 545, 109 S.Ct. 2003, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978), and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), allows ancillary (supplemental) jurisdiction over third-party claims[5] where the insurer-third-party defendant may be liable over for some or all of the amount sought in the underlying claim.

The decisions again relied upon by the Insurers, *Hudson Insurance Co. v. American Elec. Corp.*, 957 F.2d 826, 830–31 (11th Cir.1992) and *McGraw–Edison Co. v. Speed Queen Co.*, 768 F.Supp. 684 (E.D.Wis.1991), are, as Judge Rovner noted, inapposite. In *Hudson*, the insurance company was not impleaded on the underlying claim, which had already been resolved. Therefore, insured's direct action against the insurer lacked any federal basis apart from the underlying claim. *Hudson*, 957 F.2d at 830–31. The plaintiff in *Speed Queen* asserted CERCLA jurisdiction over one defendant and supplemental jurisdiction over a direct action against the insurer. 768 F.Supp. at 686. *Finley* prevented pendent *party* jurisdiction and § 1367 was not yet applicable. *Id.* at 687.[6] Again, *Speed Queen* did not involve a supplemental third-party claim tied directly to the outcome of an underlying, pending federal claim.

The issue of whether the insurer will be sued as a third party generally arises only in instances such as this where the insurer has disclaimed the duty to defend. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d*, § 1449 at 392 (1990) [hereinafter *Federal Practice*]. The Insurers' denial of coverage does not affect this court's jurisdiction over the third-party action. Insurers contend that Chicagoland's motion for stay and severance of the third-party insurance claims is inconsistent with the basis for jurisdiction over the third-party action. However, the propriety of a stay or severance of the insurance issues to prevent prejudice would not affect the basis for jurisdiction over those claims. The reason for a third-party action, to maximize efficiency over dependent claims, is not eliminated by a severance of issues intended to prevent prejudice. *See* 6 *Federal Practice* § 1449 at 392–93. Indeed, Rule 14(a) specifically provides for severance.

■ Wausau argues that the LaSalle and Chicagoland claims do not derive from a common nucleus of operative fact. However, Chicagoland's claim against Insurers seeks indemnity for liability arising from the same facts as the underlying complaint. Chicagoland's duty to defend claim is based on the complaint, an allegation of the facts in the underlying case. Therefore, Chicagoland's claims "form part of the same case or controversy" for purposes of supplemental jurisdiction. *See Estate of Bruce v. City of Middleton*, 781 F.Supp. 1013 (S.D.N.Y.1992) (supplemental jurisdiction for indemnity claim). *Compare Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir.1992) (recognizing appropriateness of abstaining in declaratory action when underlying claim pending in state court; noting overlapping issues of fact and law). Claims that derive from a common nucleus of operative fact would ordinarily be tried together and form part of the same case or controversy. *See Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. Only a loose factual connection is necessary. *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 258 (N.D.Ill. 1992). In this case there is more than a mere loose factual connection between the

---

4. Insurers fail to differentiate *Collier* in their motion to reconsider Judge Rovner's order.

5. Rule 14(a) does not create an independent basis for jurisdiction. *See* Fed.R.Civ.P. 82.

6. *But see American Pfauter, Ltd. v. Freeman Decorating Co./Freeman Co.*, 772 F.Supp. 1071 (N.D.Ill.1991) (finding supplemental jurisdiction under § 1367 for a pendent party claim).

insurance actions and the underlying complaint. Furthermore, it would be expected that a defendant, haled into federal court, would attempt to resolve issues of the duty to defend in that same proceeding. *See* 6 *Federal Practice* § 1449 and cases cited therein discussing impleader of insurer. The Insurers' focus on facts with no nexus in either action misses the larger point of the indemnity sought by Chicagoland based on the outcome of the LaSalle action. Similarly, Wausau's abstention arguments are unpersuasive.[7]

■ American and Continental argue that the "no joinder" clauses in those policies prevent the third-party action in this case.[8] Wausau has also filed a motion to dismiss on this issue, which the court instructed would be treated as a motion for summary judgment. Such clauses contravene the purposes of Rule 14(a) and are ignored by most federal courts. 6 *Federal Practice* § 1449 at 395; *see Colton v. Swain,* 527 F.2d 296, 299 (7th Cir.1975); *Jordan v. Stephens,* 7 F.R.D. 140 (D.Mo.1945); *see also Hall v. Allstate Ins. Co.,* 880 F.2d 394, 397–98 (11th Cir.1989). In *Colton v. Swain,* the Seventh Circuit held that although a procedural rule, Rule 14, should not create a substantive right of action where Illinois substantive law and the insurance contract disallow direct actions against insurers, the refusal to defend estops the insurer's right to insist on adherence to this provision. 527 F.2d at 299–302. Therefore, the motion to reconsider the August 7 order will be denied and the duty to defend will be considered *infra* in connection with the motions of Chicagoland and Wausau for summary judgment.

## DUTY TO DEFEND

■ Chicagoland and the Schaffners have moved for partial summary judgment as to Counts Four through Six of their first amended third-party complaint, asserting breach of the Insurers' duty to defend and requesting declaratory judgment on the resulting estoppel and/or waiver of policy defenses. Liberty has filed a cross-motion for summary judgment on this issue. Wausau has filed a motion to dismiss, which the court indicated would be treated as a motion for summary judgment, touching on this issue. On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Visser v. Packer Engineering Assoc., Inc.,* 909 F.2d 959, 960 (7th Cir.1990); *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989); *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 471 (7th Cir.1988). Summary judgment will be denied where there is a genuine issue of material fact such that a reasonable jury could rule for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Jakubiec,* 844 F.2d at 473.

7. Wausau's argument for abstention under the *Colorado River* doctrine is unpersuasive in that neither of the three general abstention categories, nor the exceptional abstention situation recognized in *Colorado,* apply to this case. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This case does not involve important problems of state law transcending the result in this case, 424 U.S. at 815–816, 96 S.Ct. at 1245, and the federal forum is convenient, the case has proceeded significantly in this forum and this action was filed before the Insurers filed their declaratory judgment action in DuPage County Court. *See LaDuke v. Burlington Northern R.R. Co.,* 879 F.2d 1556, 1556 (7th Cir.1989). Wausau's request that this court decline to exercise jurisdiction under 28 U.S.C. § 1367(c) is also unpersuasive and Wausau's citation to cases involving direct action statutes does not support abstention under § 1367(c). Despite all the pretrial activity regarding the duty to defend, the Insurers' arguments that the insurance claims "substantially predominate" such that this court should abstain under § 1367(c)(2) are unpersuasive. Moreover, the DuPage County action has been dismissed because of the pendency of this action.

8. The "no joinder" clauses provide:

No person or organization shall have any right under this policy to join the [insurer] as a party to any action against the insured to determine the insured's liability, *nor shall the [insurer] be impleaded by the insured or his legal representative.*

(Emphasis added).

Under well-settled Illinois law, only three options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend. Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured....

*Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 821 (7th Cir.1981) (citing *Thornton v. Paul*, 74 Ill.2d 132, 145–46, 23 Ill.Dec. 541, 546, 384 N.E.2d 335, 340 (1978)). The only exception to this rule occurs when there is a significant direct conflict of interest between the insurer and the insured. *Id.* at 821 n. 3, 824–25.

The duty to defend is separate and distinct from the duty to indemnify. The duty to defend is much broader than the duty to indemnify. *See Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987); *Central Mut. Ins. Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill.Dec. 826, 571 N.E.2d 806 (1st Dist. 1991); *Colton v. Swain*, 527 F.2d 296, 301–02 (7th Cir.1975). The allegations of the complaint generally determine whether there is a duty to defend. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill.App.3d 1087, 1091–92, 140 Ill.Dec. 907, 910, 550 N.E.2d 1032, 1035 (1st Dist.1989), *aff'd*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991). The duty to defend is triggered if the complaint's allegations "show that the insured's conduct is potentially within coverage." *Wilkin Insulation*, 193 Ill. App.3d at 1091–92, 140 Ill.Dec. at 910, 550 N.E.2d at 1035; *Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.*, 832 F.2d 1037 (7th Cir.1987) (applying Illinois law); *Insurance Co. of Illinois v. Markogiannakis*, 188 Ill. App.3d 643, 661, 136 Ill.Dec. 307, 318, 544 N.E.2d 1082, 1093 (1st Dist.1989). In determining whether there is a duty to defend, "[t]he underlying complaints and the insurance policies must be liberally construed in favor of the insured." *Wilkin Insulation*, 144 Ill.2d at 72–73, 161 Ill.Dec. at 284, 578 N.E.2d at 930. Alternatively stated, unless the allegations in the complaint, if true, would exclude coverage, the insurer has a duty to defend. *Markogiannakis*, 188 Ill. App.3d at 661, 136 Ill.Dec. at 318, 544 N.E.2d at 1093. Before trying to decide whether the Insurers actually refused to defend[9] or appropriately sought declaratory relief, the policy exclusions which Insurers argue clearly forestall any possibility of indemnity, and therefore any duty to defend, will be addressed in turn.

### A. Pollution Exclusion

Wausau and Liberty argue that there is no duty to defend Chicagoland because the pollution exclusion clauses of their respective policies exclude coverage for any potential liability under LaSalle's complaint. Wausau's policies each contained either a "sudden and accidental" pollution exclusion exception[10] or a total pollution exclusion.[11] Liberty's policies included the "sudden and accidental" exception. According to the Rule 12(n) response filed by Continental and American, the policies issued to Chicagoland contained the "sudden and accidental" exception. "Where a policy provision is clear and unambiguous, its language must be taken in its "plain, ordinary and popular sense." *Wilkin Insulation*, 144 Ill.2d at 72–73, 161 Ill. Dec. at 284, 578 N.E.2d at 930. The policies containing total pollution exclusions are unambiguous with regard to coverage—there is none. Therefore, the Wausau policies with

9. The parties disagree whether Wausau actually refused to defend.

10. Although the policy does not cover property damage from any pollution releases, etc., this pollution exclusion contains an exception, *i.e.*, coverage is provided for releases, etc., which are "sudden and accidental."

11. According to Wausau's statement of facts, the policies in effect from August 1, 1980 to August 1, 1985 contained a "sudden and accidental" exception to the general pollution exclusion. The Wausau policies in effect from August 1, 1985 to August 1, 1989 contained total pollution exclusion provisions.

total pollution exclusion clauses do not create a duty to defend.[12]

■ The subject of contention in this case is the applicability of the "sudden and accidental" exceptions contained in some of the Insurers' policies. However, the Illinois Supreme Court's decision in *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992), is dispositive. Both Wausau and Liberty point to the fact that the complaint alleges, *inter alia*, contamination occurring sometime over the long course of Chicagoland's operation of the dry cleaning business. The Insurers characterize the complaint's factual allegations as intentional, long-term discharge, neither "sudden" nor "accidental" and cite numerous Illinois cases to support this contention.

Subsequent to the parties' filings, the Illinois Supreme Court decided the *Outboard Marine* case. 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204. Outboard Marine Corp. ("OMC") had released contaminants on its own property which reached Waukegan Harbor and Lake Michigan. The United States Environmental Protection Agency and State of Illinois brought actions against OMC for the discharges. OMC tendered the defense of the underlying actions to its insurers pursuant to comprehensive general liability ("CGL") insurance policies. The insurers refused to defend OMC alleging the complaints were not covered. OMC defended itself and entered into consent decrees for the cleanup of the bodies of water. OMC sued for declaratory judgment against the insurers on the duty to defend and indemnify. The circuit court ruled in favor of the insurers on the pollution exclusion issue and the appellate court affirmed the decision. On appeal, the Illinois Supreme Court reversed the circuit court's ruling on the pollution exclusion clauses.

The insurers argued that the underlying complaint's allegation of "continuous" polluting by OMC took it out of the unambiguous definition of "sudden." The appellate court agreed that "sudden" unambiguously meant "abrupt" with a quick, temporal element. The Illinois Supreme Court disagreed, however, and determined that the "sudden and accidental" exception in "occurrence-based CGL policies" are subject to more than one reasonable meaning and that such ambiguity must be resolved in favor of the insured.[13] "Sudden," the Court noted, has been defined variously as "abrupt" or "unintended" or "unexpected." *OMC* 154 Ill.2d at 120–21, 180 Ill.Dec. at 705, 607 N.E.2d at 1218. The Court's decision, reversing the Second District Appellate Court, was consistent with prior appellate court rulings and *dicta* in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill.App.3d 1087, 1099, 140 Ill.Dec. 907, 914–15, 550 N.E.2d 1032, 1039–40 (1st Dist.1989); *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 388, 129 Ill.Dec. 306, 312–13, 535 N.E.2d 1071, 1077–78 (1st Dist.1989); and *Reliance Insurance Co. v. Martin*, 126 Ill.App.3d 94, 97–98, 81 Ill.Dec. 587, 589–90, 467 N.E.2d 287, 289–90 (1st Dist.1984).

LaSalle's complaint reads: "[p]laintiff is informed and believes that during [Chicagoland's] operation of the [p]roperty, PCE and other volatile organic compounds were released, spilled or discharged, causing soil and groundwater contamination." Compl. at ¶ 16. The complaint also alleges that Chicagoland and the Schaffners "knew or should have known of the release of PCE and other volatile organic compounds." Compl. at ¶ 17.

---

**12.** Chicagoland as much as concedes this point by failing to address the total exclusion policies in its reply brief.

**13.** The Illinois Supreme Court noted that courts throughout the country are divided on the meaning of "sudden" within pollution exclusions. Some construe "sudden" as unambiguous, meaning abrupt; some construe it as ambiguous, meaning either unintended or unexpected. The Court's determination that "sudden" is ambigu-

ous was based, in part it seems, on the fact that there is such division over the meaning of the term. *OMC* 154 Ill.2d at 122–23, 180 Ill.Dec. at 706, 607 N.E.2d at 1219 (see cases cited therein). The Court also rejected defendants' arguments that such an interpretation rendered the second part, "accidental," meaningless. Accidental was defined to include "continuous or repeated exposure" which is "unintended or unexpected," and to construe sudden as meaning abrupt only, the Court determined, would contradict the term accidental. *Id.*

Additionally, the complaint contains two counts encompassing "negligent" release of PCE. *See* Compl. Sixth and Seventh Causes of Action. The complaint therefore, does not only charge intentional release and does not clearly only charge ongoing release. Therefore, the "sudden and accidental" exception applies to the complaint's allegations, whether or not the releases were "abrupt" or "continuous and repeated" because potentially unintended and unexpected accidental releases are charged. The complaint charges that the releases occurred "during [Chicagoland and the Schaffners'] operations" on the property, Compl. at ¶ 17, and charges intentional, willful or malicious conduct to conform with certain counts, *see id.* at ¶¶ 46, 49, 74, 75, 76. The complaint simply alleges releases, which could be abrupt or otherwise, and which, if unintentional, could potentially create liability under the negligence count. The complaint does allege conduct potentially covered by exceptions in the "sudden and accidental" pollution exclusion policies.

### B. Occurrence

■ Liberty argues that an entity making a tort claim against an insured must sustain harm "within the period of the policy" for the insurance policy's coverage of occurrences to apply. Since the LaSalle trust did not have an interest in the property when Chicagoland is alleged to have polluted the property, Liberty argues, LaSalle could not have suffered damage to its property during the period covered by the policy. *Hoppy's Oil Svc., Inc. v. Insurance Co. of N. Am.*, 783 F.Supp. 1505 (D.Mass.1992). Although Liberty's argument is logically attractive, it ignores the fact that "groundwater contamination" is alleged. Compl. at ¶ 16. As is discussed *infra*, in connection with the "owned and alienated property exclusions," groundwater is not the property of the insured. To the extent that the groundwater is alleged to have been contaminated, there was damage to third-party property during the policy period, for which LaSalle is now responsible to remedy and seeks compensation. *See United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 394, 129 Ill.Dec. 306, 316, 535 N.E.2d 1071, 1081 (1st Dist.1989). Therefore, an "occurrence" potentially covered by the policies is alleged in the complaint.

### C. Owned And Alienated Property Exclusion

Both Liberty and Wausau make the argument that there is no potential coverage in this case because the policies unambiguously exclude damage to "property owned or occupied by or rented to the insured" and "premises alienated by the named insured." The only property damage alleged, according to Insurers, is damage that took place while the Schaffners owned the property and to the property alienated by them to LaSalle. The "alienated property" exclusion keeps coverage from being created "simply through the insured's conveyance of property." *See Borden, Inc. v. Affiliated FM Insurance Co.*, 682 F.Supp. 927 (S.D.Ohio 1987), *aff'd*, 865 F.2d 1267 (6th Cir.1989).

■ The complaint, however, alleges, *inter alia*, contamination of "groundwater." In *Central Illinois Public Service Co. v. Allianz Underwriters Ins. Co.*, No. 90 L 11094 (Cir. Ct. Cook Cnty. Sept. 26, 1991), the circuit court determined that the owned and alienated property exclusion did not relieve insurers of potential liability when groundwater contamination is alleged. The circuit court noted that groundwater in Illinois is subject to the "reasonable use" doctrine, and is not a matter of legal title. Pollution into water "causes damage to tangible property." *Id.* (quoting *Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1194 (9th Cir. 1986)). The *Allianz* court determined that the owned and alienated property exclusion had "no application" where government-ordered correction of actual or threatened pollution damage to third-parties, *i.e.*, groundwater, was alleged. *Id.* Chicagoland also cites *Claussen v. Aetna Casualty and Surety Co.*, 754 F.Supp. 1576, 1579–81 (S.D.Ga.1990) and *United States v. Conservation Chemical Co.*, 653 F.Supp. 152, 200 (W.D.Mo.1986) in support. The *Claussen* court followed the same reasoning as *Allianz*. Since the groundwater is not owned, alleged damage to groundwater is not excluded by the owned property exclusion. 754 F.Supp. at 1580–81. The *Claussen* court went even further in

*dicta* to note that even if the soil pollution had not yet damaged the groundwater, the expansive definition of "damage" should include expense of preventing damage to the groundwater. *Id.* Wausau's citation to other cases to the effect that restoration to premises of a new owner is excluded, do not adequately address the groundwater issue. In any event, groundwater contamination is alleged in the complaint for which the owned and alienated property exclusions are inapplicable.

### D. Inadequate Notice of Occurrence or Claim

Wausau argues that Chicagoland breached a condition precedent to coverage by failing to give Wausau notice of the occurrence "as soon as practicable" and notice of the claim "immediately." Wausau claims that in the October 1988 property sales agreement, Chicagoland acknowledged the use of hazardous or toxic chemicals at the property and that the transfer documents contemplated environmental testing, removal or closure of underground storage tanks, removal and disposal of contaminated soil, and a set aside of $250,000 for this clean-up. The underground storage tanks were removed and the soil was tested and remediated all before Wausau received notice in October 1990. Chicagoland spent $133,000 on additional testing and remediation and "refused," according to Wausau, to provide information or otherwise cooperate regarding the claim. Wausau alleges that Chicagoland had knowledge of the PCE contamination, which is the subject of the complaint,[14] as early as June 1990 and that it was not notified of PCE contamination until November 1991.

The purpose of prompt notification provisions in insurance policies is to allow an insurer to make prompt and thorough investigation of claims. *University of Illinois v. Continental Casualty Co.*, 234 Ill.App.3d 340, 175 Ill.Dec. 324, 599 N.E.2d 1338 (4th Dist. 1992); *Illinois Valley Minerals Corp. v. Royal–Globe Ins. Co.*, 70 Ill.App.3d 296, 299–300, 26 Ill.Dec. 629, 632, 388 N.E.2d 253, 256 (3d Dist.1979). Wausau argues that when the insured fails to comply with this requirement,

the insurer may deny liability regardless of whether it has been thereby prejudiced. *University of Illinois*, 234 Ill.App.3d at 365, 175 Ill.Dec. at 340, 599 N.E.2d at 1355. The *University of Illinois* case involved an action against the insurer for indemnity and the insurer's argument that the insured's late notice of several administrative complaints breached a condition precedent to coverage. *Id.* 234 Ill.App.3d at 362–67, 175 Ill.Dec. at 338–41, 599 N.E.2d at 1353–56. The insurance policy in *University of Illinois* did not include a duty to defend provision. *Id.* 234 Ill.App.3d at 346, 175 Ill.Dec. at 328, 599 N.E.2d at 1343. The Illinois Appellate Court reversed summary judgment for the insured and remanded for findings of fact relevant to the issue of late notice. *Id.* 234 Ill.App.3d at 365–67, 175 Ill.Dec. at 340–41, 599 N.E.2d at 1355–56.

 Unlike *University of Illinois*, the instant case involves policies including a duty to defend. Generally, a court will look only at the complaint and the policy to determine whether there is a duty to defend. *Maryland Cas. Co. v. Peppers*, 64 Ill.2d 187, 193, 355 N.E.2d 24, 28 (1976). Under Illinois law, a court may look outside the complaint in determining the duty to defend "only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy." *Bituminous Casualty Co. v. Fulkerson*, 212 Ill.App.3d 556, 562, 156 Ill.Dec. 669, 674, 571 N.E.2d 256, 261 (5th Dist.1991). Wausau's notice "defense" to the duty to defend is ancillary to the underlying dispute. *National Union Fire Ins. Co. of Pittsburgh, PA v. Thomas M. Madden & Co.*, 813 F.Supp. 1349, 1351 (N.D.Ill.1993). An insured's failure to notify the insurer of a claim that the insured reasonably believes implicates coverage precludes coverage. *Id.* (citing *American Country Ins. Co. v. Efficient Constr. Corp.*, 225 Ill.App.3d 177, 181, 167 Ill.Dec. 458, 460, 587 N.E.2d 1073, 1075 (1st Dist.1992)). If the relevant facts underlying the notice are undisputed, the court may determine whether notice was reason-

---

14. Allegedly, the contamination relating to the underground storage tanks did not involve PCE and was remediated by Chicagoland.

able as a matter of law. *Id.* (citing *American Family Mut. Ins. Co. v. Blackburn*, 208 Ill.App.3d 281, 287, 153 Ill.Dec. 39, 43, 566 N.E.2d 889, 893–94 (4th Dist.1991)). Where there are factual disputes, the question of reasonable notice is one for the jury. *Royal–Globe Ins.*, 70 Ill.App.3d at 299–300, 26 Ill. Dec. at 632, 388 N.E.2d at 256. If the insured breached the notice condition, then presumably the insured would be entitled to neither indemnity nor defense by the insurer.[15] *Thomas v. Madden*, 813 F.Supp. at 1351; *Royal–Globe Ins.*, 70 Ill.App.3d at 298–303, 26 Ill.Dec. at 631–634, 388 N.E.2d at 255–258. *Compare Upjohn Co. v. Aetna Cas. and Sur. Co.*, 768 F.Supp. 1186, 1203 (W.D.Mich.1990) (late notice not a defense to duty to defend under Michigan law). *See also St. Paul Fire & Marine Ins. Co. v. Vigiland Ins. Co.*, 724 F.Supp. 1173, 1180–81 (M.D.N.C.1989) (waiver of notice defense after refusal to defend on other grounds); *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 822–23 (7th Cir.1981) (discussing waiver of notice defense). In this case, the parties dispute when it was that Chicagoland became aware of PCE contamination such that Wausau should have been notified under the policy. Therefore, there is a genuine issue of material fact that precludes summary judgment as to Wausau's duty to defend.

### E. Request for Defense

Count V of the first amended third-party complaint seeks declaratory relief on the breach of the duty to defend and resulting estoppel of policy defenses. Wausau argues that it has done all that it is required to do under Illinois law and that a non-waiver agreement signed by the parties precludes estoppel in this case. Chicagoland argues that each insurer wrongfully refused to defend Chicagoland in the underlying action. In response to Chicagoland's tender of defense and the complaint, Wausau responded in writing on January 14, 1992 as follows:

Notwithstanding our reservation of rights, Wausau is willing to participate in the defense of Chicagoland Laundry & Cleaners, Inc., along with its other carriers pursuant to the Non–Waiver Agreement, for the lawsuit entitled LaSalle National Trust, NA vs. Jerry Schaffner, Martin Schaffner, Chicagoland Laundry & Cleaners, Inc.

Wausau repeated this offer on February 24, 1992. Chicagoland rejected these offers.

Chicagoland argues that where potential coverage exists, the duty of an insurer to defend is "absolute" regardless of whether other insurers may also owe such a duty. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 56, 112 Ill.Dec. 684, 699, 514 N.E.2d 150, 165 (1987). In *Raymark*, the Illinois Supreme Court rejected the premise underlying a pro rata approach when multiple policies are involved. *Id.* The Court determined that nothing in the policy permitted pro ration of the defense and each primary insurer was fully and independently obligated to defend the insured. *Id.* at 30, 112 Ill.Dec. at 687, 514 N.E.2d at 153. Chicagoland characterizes Wausau's offer to "participate" in the defense as an effective refusal to defend. Liberty, Continental and American have apparently refused to defend outright on the basis that there was no potential coverage.

■ Wausau and the other Insurers had three options available when Chicagoland tendered the defense on LaSalle's claim. They could agree to defend, seek declaratory judgment on the duty to defend, or refuse to defend and take their chances on whether refusal would be unjustified. *See Eichelkraut & Sons, Inc. v. Bituminous Cas. Corp.*, 166 Ill.App.3d 550, 555–56, 117 Ill.Dec. 13, 17, 519 N.E.2d 1180, 1184 (1st Dist.1988) (insurer need not file declaratory judgment in every action if fair reading of complaint reveals no potential coverage); *see Murphy v. Urso*, 88 Ill.2d 444, 450, 58 Ill.Dec. 828, 831, 430 N.E.2d 1079, 1082 (1982). Wausau's offer to "participate" in the defense on a pro rata basis does not equate to an acceptance of

---

**15.** Illinois courts have held that prejudice is not necessary for breach of the notice requirement to eliminate indemnity, however, prejudice is relevant to reasonableness of notice. *Royal–Globe Ins.*, 70 Ill.App.3d at 302–03, 26 Ill.Dec. at 634, 388 N.E.2d at 258.

defense with a reservation of rights. *Raymark,* 118 Ill.2d at 30, 112 Ill.Dec. at 687, 514 N.E.2d at 153. Wausau's offer got the "reservation of rights" part correct, but not the offer to defend.

Finally, Wausau, Continental and American all argue that they are not obligated to provide the insured a defense because of a conflict of interest. Wausau maintains that concurrently seeking a declaratory judgment as to coverage would be inappropriate because this might create a conflict of interest in this case. *Murphy v. Urso,* 88 Ill.2d 444, 450, 58 Ill.Dec. 828, 831, 430 N.E.2d 1079, 1082 (1982); *Maneikis,* 655 F.2d at 824–25. According to Wausau, Chicagoland informed Wausau on March 12, 1992 that due to a potential conflict of interest as a result of Wausau's reservation of rights, Chicagoland asserted its right to provide its own defense. Chicagoland notes that this argument was not put forth in any of the prior communications between Chicagoland and the Insurers.

■ There is an exception to the general rule that the insurer must either defend or seek declaratory judgment and that failing to do either, the insurer is estopped from raising policy defenses. If there is a "serious" conflict of interest between the insurer and the insured, the insurer may decline to defend. *Murphy v. Urso,* 88 Ill.2d at 450, 58 Ill.Dec. at 831, 430 N.E.2d at 1082 (citing *Thornton v. Paul,* 74 Ill.2d 132, 152, 23 Ill. Dec. 541, 549, 384 N.E.2d 335, 343 (1978)); *Littlefield v. McGuffey,* 979 F.2d 101, 105–06 (7th Cir.1992); *Maneikis,* 655 F.2d at 824–25; *see also Nandorf Inc. v. CNA Ins. Cos.,* 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988 (1st Dist.1985). "Instead of participating in the defense itself, the insurer must pay the costs of independent counsel for the insured." *Id.* The *Murphy* court noted that the declaratory judgment vehicle was not an acceptable alternative to refusing representation because in that case the declaratory judgment would prejudice the underlying suit because of collateral estoppel. *Id.* 88 Ill.2d at 454, 58 Ill.Dec. at 833, 430 N.E.2d at 1084 (declaratory judgment would have been premature). This conflict relieved the insurer of his duty to defend and, there-fore, from being estopped to assert policy defenses. *Id.* 88 Ill.2d at 458, 58 Ill.Dec. at 835, 430 N.E.2d at 1086.

■ However, in a later case, *Insurance Co. of Pennsylvania v. Protective Ins. Co.,* 227 Ill.App.3d 360, 368, 169 Ill.Dec. 630, 636, 592 N.E.2d 117, 123 (1st Dist.1992), the Illinois Appellate Court rejected the insurer's contention that a conflict of interest should prevent estoppel. Where the facts alleged in the complaint bring it potentially within coverage, and a conflict prohibits the insurer from participating, the insurer must provide a defense by reimbursing the insured for independent counsel. *Id.; see also Shelter Mut. Ins. Co. v. Baily,* 160 Ill.App.3d 146, 155–56, 112 Ill.Dec. 76, 82, 513 N.E.2d 490, 496 (5th Dist.1987). The Appellate Court noted that "reimbursement" did not mean withholding payment until the underlying action was complete, but rather reimbursement should be provided as defense costs are incurred. *Id.* (citing *Gibraltar Cas. Co. v. Sargent & Lundy and Wabash Valley Power Assn.,* 214 Ill.App.3d 768, 158 Ill.Dec. 551, 574 N.E.2d 664 (1st Dist.1991)). In *Insurance Co. of Pennsylvania,* where the obligation to provide a defense was clear, and the insurer made no offer to advance funds and did not indicate its basis for denying a defense, the insurer was estopped from asserting policy defenses. *Id.* Likewise, the alleged conflict of interest in this case does not eliminate the Insurers' duty to defend. Defense costs must be reimbursed, notwithstanding the effect of a conflict on the estoppel issue.

### F. The Complaint

■ Liberty and Wausau argue that the LaSalle complaint is based entirely on alleged intentional and fraudulent conduct. The complaint alleges the Schaffners did "know or should have known of the release of PCE into the soil and groundwater," Compl. at ¶ 44 (Fraudulent Nondisclosure Count),[16] that "at all times ... [they] used and maintained the Property in violation of the law ... by allowing hazardous substances and

---

**16.** To the extent Insurers point to "willful, oppressive and malicious" language in the Fraudulent Nondisclosure Count, this allegation is necessary for the particular legal claim and does not support Insurers' contention that *only* willful, etc., action is alleged.

waste to contaminate the soil and groundwater," ¶ 53 (Private Nuisance Count), that they "were acting with full knowledge of the consequences and damages being caused ... because such action was willful, oppressive and malicious," ¶ 57 (Private Nuisance Count), and that they "were acting with full knowledge of the consequences and damages being caused," ¶ 61 (Public Nuisance Count), and on and on. However, the factual allegations section of the complaint, ¶¶ 9–23, alleges only that "during [the Schaffners'] operation on the Property, PCE ... [was] released, spilled or discharged, causing soil and groundwater contamination," ¶ 16, and that the Schaffners "knew or should have known of the release of PCE," ¶ 17. The Negligent Hazardous Waste Disposal Count (Sixth Cause of Action) and the Negligence Count (Seventh Cause of Action), although incorporating the prior allegations, only allege the Schaffners "negligently maintained, controlled, managed or operated the hazardous substances and dry cleaning products present at the site," ¶ 65, and "failed to exercise ordinary care in the management of their operations," ¶ 70. Although, in the main, the complaint charges strict liability under CERCLA and intentional pollution, the two negligence-based counts could create liability covered by the policies. Even if one theory of recovery is within the potential coverage, there is a duty to defend. *Wilkin Insulation,* 144 Ill.2d at 72–73, 161 Ill.Dec. at 284, 578 N.E.2d at 930. "The threshold that a complaint must meet to present a claim for potential coverage is low. Doubt as to coverage must be resolved in favor of the insured." *Wilkin Insulation,* 193 Ill.App.3d at 1091–92, 140 Ill.Dec. at 910, 550 N.E.2d at 1035 (1st Dist.). There are no genuine issues of material fact with regard to the language of the policies and the allegations contained in the complaint. There is a potential for coverage under the American, Continental and Liberty policies and a corresponding duty to defend by, in this case, reimbursing defense costs.

### ESTOPPEL AND WAIVER

Chicagoland's motion for summary judgment on the declaratory action counts is based on the contention that the Insurers' breach of the duty to defend estops them from asserting policy defenses. Additionally, Chicagoland argues that Continental and American have waived their rights to raise policy defenses by failing to respond to Chicagoland's tender of defense. Since the underlying complaint is still pending, the waiver and estoppel issues on indemnity are not yet ripe for decision. *See United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d 334, 338 (7th Cir.1992); *Travelers Ins. Co. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir.1992); *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Company,* 976 F.2d 1037, 1042 (7th Cir.1992); *see also OMC,* 154 Ill.2d at 117, 180 Ill.Dec. at 703, 607 N.E.2d at 1216; *Maryland Cas. Co. v. Chicago & North Western Transp. Co.,* 126 Ill.App.3d 150, 156, 81 Ill.Dec. 289, 293, 466 N.E.2d 1091, 1095 (1st Dist.1984). Since there is no live case or controversy over indemnity at this point, Chicagoland's claims for declaratory relief on the waiver and estoppel issues, going to the ultimate question of indemnity, will be dismissed. Chicagoland's motion for stay of discovery, severance and protective order on the indemnity issue is denied as moot. The motion of Continental and American to compel Chicagoland's privilege log is also denied as moot.

IT IS THEREFORE ORDERED that Chicagoland's motion for summary judgment is granted in part and denied in part. Liberty, Continental and American have a duty to defend under policies containing "sudden and accidental" exceptions to pollution exclusion. Liberty's cross-motion for summary judgment [67] is denied. Wausau's motion to dismiss Chicagoland's claims [97] is denied. The motions of Wausau, American and Continental to reconsider the August 7, 1992 decision denying the motion to dismiss for lack of subject matter jurisdiction [100, 103] are denied. Chicagoland's motion for stay of discovery, severance and protective order [88] is denied. The motion of Continental and American to compel Chicagoland's privilege log and for protective order [138] is denied. Chicagoland's claims for declaratory judgment of estoppel and waiver are dismissed without prejudice as not ripe.